**UNITED STATES of America,**

v.

**OMNI CONSORTIUM, INC., Multicultural Professionals, Multicultural Education Consultants, Florita Cedro Tolentino, Noel Cedro Tolentino, Angelica Tolentino, Cesar James Librodo, Owen Cruz Carsi.**

**United States of America,**

v.

**Omni Consortium, Inc. and Noel Cedro Tolentino.**

**United States of America,**

v.

**Omni Consortium, Inc. and Noel Cedro Tolentino.**

**United States of America,**

v.

**Roland Sotelo and Juan Canales.**

**Nos. EP–04–CR–02091–KC to EP–04–CR–02094–KC.**

United States District Court, W.D. Texas, El Paso Division.

Dec. 4, 2007.

Brandy Gardes, U.S. Attorneys, Assistant U.S. Attorney, El Paso, TX, for United States of America.

Manuel J. Barraza, Law Office of Manuel J. Barraza, Christopher Allen Antcliff, Stanton & Antcliff, P.C., El Paso, TX, Ronald F. Ederer, The Law Office of Ron F. Ederer, San Antonio, TX, for Omni Consortium, Inc., Multicultural Professionals, Multicultural Education Consultants, Florita Cedro Tolentino, Noel Cedro Tolentino, Angelica Tolentino, Cesar James Librodo, Owen Cruz Carsi.

## ORDER

KATHLEEN CARDONE, District Judge.

On this day, the Court considered the Government's "Brief in Response to Court's Order Concerning Order of Dismissal" ("Brief"). The Government's Brief followed an Order by the Court issued on October 31, 2007, requiring both parties to brief four issues related to the Government's proposed "Order of Dismissal." Court Order, Oct. 31, 2001 at 3, Ex. A. Specifically, the Court ordered both the Government and Defendant to brief: (1) how venue has now become proper in the

Southern District of Texas for Defendant Sotelo; (2) how, assuming that venue is now proper in the Southern District of Texas for Defendant Sotelo, venue is not also proper in that district for all other Defendants; (3) what effect trying the case in this Court has had on the issue of venue and whether waiver of venue should be considered; and (4) the effect that this dismissal and referral will have on Defendant Sotelo's rights. *Id.* at 3.

Having reviewed the Government's Brief, the unique facts of the case, and the extant case law, the Court is unconvinced that granting the Government's Order of Dismissal serves either the public interest in the fair administration of criminal justice or acts to preserve the integrity of the courts. *See In re Richards,* 213 F.3d 773, 786–87 (3rd Cir.2000) (citations omitted). More importantly, the Government has failed to demonstrate how the Order of Dismissal does not represent an incident of prosecutorial harassment against Defendant Sotelo.[1] As a consequence, the "leave of court" which the Government seeks, and which Rule 48(a) requires, is hereby **DENIED.** Fed.R.Crim.P. 48(a).

## I. DISCUSSION

### A. Standard

Until 1946, federal prosecutors had the unrestricted common-law right to terminate prosecution by entry of a *nolle prosequi* without leave of court. *United States v. Salinas,* 693 F.2d 348, 350–51 (5th Cir. 1982). That absolute right was extinguished upon the codification of the Federal Rules of Criminal Procedure, following their submission by the Supreme Court to Congress and adoption by Congress. *United States v. Cowan,* 524 F.2d 504, 510–11 (5th Cir.1975). Subsequent to its legislative ratification in 1946 and succeed-

ing amendments, the current Rule 48(a) deviates from the common law by mandating that "[t]he government may, *with leave of court,* dismiss an indictment, information, or complaint." Fed.R.Crim.P. 48(a) (emphasis added).

In *United States v. Cowan,* the Fifth Circuit undertook a sweeping examination of the history of Rule 48. *Cowan,* 524 F.2d at 509–511. Subsequent to its analysis, the Fifth Circuit held that "[i]t seems manifest that the Supreme Court intended to make a significant change in the common law rule by vesting in the courts the power and the duty to exercise a discretion for the protection of the public interest." *Id.* at 511. Although the *Cowan* court explained that the "Executive remains .... the first and presumptively the best judge of whether a pending prosecution should be terminated," the court also held that the leave of court requirement protected the "public interest in the even-handed administration of criminal justice without encroaching on the primary duty of the executive to take care that the laws are faithfully executed." *Id.* at 513. As a consequence, the court found that the leave of court requirement was "not promulgated to shift absolute power from the [e]xecutive to the [j]udicial [b]ranch," but rather, "was intended as a power to check power." *Id.* To synchronize the functions of the judicial and executive branches and "to achieve a balance that serves both practical and constitutional values," the *Cowan* court held that the exercise of executive discretion with respect to pending prosecutions "should not be judicially disturbed unless clearly contrary to manifest public interest." *Id.*

In a per curiam opinion released two years after *United States v. Cowan,* the

---

**1.** *See infra,* note 2.

Supreme Court interpreted the phrase "leave of court" thus:

> The words "leave of court" were inserted in Rule 48(a) without explanation. While they obviously vest some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by this Court. The principal object of the "leave of court" requirement is apparently to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection.

*Rinaldi v. United States,* 434 U.S. 22, 30, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) (per curiam) (citations omitted).

█ The *Rinaldi* Court maintained that the analytical focus should not fall on "whether the decision to maintain the federal prosecution was made in bad faith," but rather, should concentrate on "whether the Government's later efforts to terminate the prosecution were similarly tainted with impropriety." *Id.* So, despite the Court's reluctance to define the precise contours of the district courts' discretion under Rule 48, the Court did incorporate

the growing sense among the Circuit Courts that Rule 48(a) serves principally to "protect a defendant against prosecutorial harassment." *See id.* (quoting *United States v. Cox,* 342 F.2d 167, 171 (5th Cir. 1965) (holding that the purpose of Rule 48 is to prevent harassment of defendant by charging, dismissing, and re-charging without placing defendant in jeopardy), *Woodring v. United States,* 311 F.2d 417, 424 (8th Cir.1963) (same)). Later, an en banc panel of the Fifth Circuit adopted this holding in *United States v. Hamm,* emphasizing that the leave of court requirement of Rule 48(a) "is *primarily intended* to protect the defendant against prosecutorial harassment." *United States v. Hamm,* 659 F.2d 624, 628 (Former 5th Cir.1981) (en banc) (emphasis added).[2]

█ Thus, to invoke its discretionary authority under Rule 48(a), the district court must find that the Government has dismissed an indictment to harass or otherwise prejudice a defendant. *See United States v. Welborn,* 849 F.2d 980, 982 (5th Cir.1988) (per curiam); *Hamm,* 659 F.2d at 628; *Cox,* 342 F.2d at 171. Attempting to build upon what it referred to as the "vague" guidance of the Supreme Court

---

**2.** More recent decisions of the circuit courts affirm the proposition that the judicial protection of the defendant forms the bedrock of the power vested in the district courts by Rule 48(a). In 2000, the Third Circuit incorporated the Fifth Circuit's rule that "Rule 48(a) is primarily intended to protect a defendant from prosecutorial harassment." *In re Richards,* 213 F.3d 773, 786–87 (3rd Cir.2000). Similarly, the Fourth Circuit held that "the principal object of the leave of court [in Rule 48(a)] is apparently to protect a defendant against prosecutorial harassment". *United States v. Smith,* 55 F.3d 157, 159 (4th Cir. 1995). Citing to the Fourth Circuit, the Seventh Circuit held that "Rule 48 allows a court to ensure the fair administration of justice and prevent harassment of the defendant." *United States v. Martin,* 287 F.3d 609, 622–23 (7th Cir.2002) (citations omitted). In almost

identical form, the Eight Circuit held that "[t]he purpose of Rule 48 is to enhance the fair administration of criminal justice and to prevent the [G]overnment from harassing the defendant." *United States v. Sprofera,* 299 F.3d 725, 727 (8th Cir.2002). Likewise, the Ninth Circuit has referred to the protection of defendants as the "principal purpose" of Rule 48(a), while the Tenth Circuit considers this the "primary purpose" of Rule 48(a). *United States v. Garcia–Valenzuela,* 232 F.3d 1003, 1008 (9th Cir.2000); *United States v. Strayer,* 846 F.2d 1262, 1265 (10th Cir.1988). Thus, while ambiguity continues to exist in how district courts may employ their Rule 48(a) powers, the prevailing view from the Supreme Court and the circuit courts clearly calls on district courts to employ this power, when they must, to protect a defendant from harassment.

concerning Rule 48(a), the Third Circuit explained that "[t]he concern of prosecutorial harassment speaks to the danger that a prosecutor will engage in a cycle of levying and dismissing charges against a particular defendant." *In re Richards,* 213 F.3d at 786. Put another way, the Fifth Circuit has stated that prosecutorial harassment "involves charging, dismissing, and subsequently commencing another prosecution at a *different time or place* deemed more favorable to the prosecution." *United States v. Salinas,* 693 F.2d 348, 351 (5th Cir.1982) (citing *United States v. Ammidown,* 497 F.2d 615, 620 (D.C.Cir.1973) (emphasis added)). The *Salinas* court found that the critical factor in the district courts' analysis of the "propriety or impropriety of the Government's efforts to terminate the prosecution" centered on "the good faith or lack of good faith of the Government in moving to dismiss." *Salinas,* 693 F.2d at 351 (citing *Rinaldi,* 434 U.S. at 30, 98 S.Ct. 81). To identify these instances of bad faith, the

district courts operate under the standard that Rule 48(a) prohibits the Government from dismissing an indictment based upon considerations "clearly contrary to the public interest." *Rinaldi,* 434 U.S. at 30, 98 S.Ct. 81; *Cowan,* 524 F.2d at 513; *Salinas,* 693 F.2d at 351.[3]

## B. Application

The proposed Order of Dismissal now before the Court presents an issue of first impression. Court Order, Oct. 31, 2001 at Ex. A. Namely, the Court must determine whether the Government, after prosecuting a defendant for over three years,[4] through a eight week trial that ended in a mistrial,[5] and after moving for severance of that defendant from the other defendants in the consolidated case [6] and having it denied by the Court,[7] may now move for dismissal of the Second Superceding Indictment [8] against that defendant in order to refer that case to another district to further prosecute the defendant.[9] The

---

**3.** In a particularly salient footnote, the *Salinas* court explained the public interest test thus:

Most of the cases talk in terms of the public interest test, *i.e.,* whether the prosecutor's decision to terminate the prosecution was "clearly contrary to the manifest public interest." The public interest standard evolved due to the fact that many courts have interpreted the rule as protecting the public interest as well as the defendant's interest. Technically speaking, this opinion does not have to discuss the "public interest" standard because the facts in the instant case indicate that the dismissal was for the purpose of harassing Salinas. "It has frequently been observed that if the prosecutor is motivated by a desire to harass the defendant, leave [to dismiss the indictment] should be withheld." This Court need not distinguish the "prosecutorial harassment" case from the "public interest" case since the basis of the public interest test is the motivation underlying the Government's motion to dismiss. It is obvious that the public interest is not served by harassing a defendant.

*Salinas,* 693 F.2d at 351 n. 15 (internal citations omitted).

**4.** The Government filed its first Indictment against Defendant Sotelo on September 30, 2004. Doc. No. 3.

**5.** Court documents reflect that the trial of Defendant Sotelo began on January 22, 2007 and the mistrial of Defendant Sotelo was entered on March 20, 2007. Doc No. 121; 177.

**6.** Doc. No. 196.

**7.** Doc. No. 207.

**8.** Doc. No. 189.

**9.** In its proposed "Order of Dismissal," the Government plainly states that the case against Defendant Sotelo "is being referred to the Southern District of Texas where venue lies." Court Order, Oct. 31, 2001 at Ex. A. This clearly evinces the Government's desire to further prosecute Defendant Sotelo.

Court is of the opinion that the Government may not.

First, the Court does not seek to encroach on the "primary duty of the Executive to take care that the laws are faithfully executed" [10] by compelling the prosecution of Defendant Sotelo. Indeed, the Court would endorse the Government's proposed Order if it sought to dismiss the Second Superceding Indictment against Defendant Sotelo with prejudice. Conversely, should the Government seek to pursue the Second Superceding Indictment against Defendant Sotelo in front of this Court, the Court stands ready to try the case.

Second, the Court does not have a proper motion to dismiss before it. Rather, the Government presented the Court with its proposed Rule 48(a) Order without filing a motion to dismiss with the Clerk of Court. Court Order, Oct. 31, 2001 at Ex. A. As a consequence, opposing counsel has not had the opportunity to contest the proposed Order. Therefore, the various permutations and holdings regarding contested and uncontested motions in the case law offer only supplementary guidance.

Lastly, this Order seeks not to explore the parameters of how the public interest may be defined or invoked to deny a motion to dismiss under Rule 48(a), but instead, only to make manifest the unequivocal holdings of both the Supreme Court and the various Circuit Courts that the primary purpose of Rule 48(a) is to protect criminal defendants from prosecutorial harassment. Without imputing motives to the individual Government attorneys whatsoever, the Court cannot help but maintain that the history of this case and the current proposed Order embody the precise type of prosecutorial harassment that Congress sought to obviate by enacting Rule 48(a).[11]

## 1. Upholding the role of the executive and judicial branches

Without equivocation, the Fifth Circuit has stated that the "Executive remains .... the first and presumptively the best judge of whether a pending prosecution should be terminated." *Cowan*, 524 F.2d at 513. In *Cowan*, the Fifth Circuit went on to explain that the exercise of the Government's "discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest." *Id.* Even so, in that same opinion, the court maintained that Rule 48(a) was promulgated "to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives." *Id.* Unlike the facts faced by the Fifth Circuit in *Cowan*, however, this case presents the Court with an instance where "under the discretion yielded to it by 48(a) to 'check (an) abuse of Executive prerogative,' the court can and must deny the motion to dismiss." *In re Washington*, 544 F.2d 203, 209 (5th Cir.1976), *rev'd on other grounds, Rinaldi*, 434 U.S. at 22, 98 S.Ct. 81.

In *Cowan*, the Fifth Circuit found that the district court abused its discretion by denying the Government's Rule 48(a) motion to dismiss. *Cowan*, 524 F.2d at 515. In that case, the district court denied the Government's motion to dismiss based on the judge's assessment that the plea agreement entered into between the government and the defendant did not serve the "best interests of justice." *Id.* at 514. The Fifth Circuit could not find that the plea negotiations between the Government and the defendants was improper,

---

**10.** *Cowan*, 524 F.2d at 512–513.

**11.** *See infra*, note 2.

nor could it find it "clearly contrary to the public interest" for the Government to accept the reduced sentences for two criminal defendants whose cooperation served to further an ongoing government investigation. *Id.* Consequently, the Fifth Circuit held that nothing in the record overcame the presumption that the Government has acted "in good faith," and as a result, the court reversed the district court's denial of the Government's motion to dismiss.

Finding so few similarities between the facts of the instant case and the facts in *Cowan,* this Court looks to the Fifth Circuit's ruling in *Salinas* for guidance. *See Salinas,* 693 F.2d at 348. In *Salinas,* the Government moved to dismiss an indictment immediately before the jury was sworn, stating only that a superseding indictment would be sought. *Id.* at 350. After the district court dismissed the jurors, the government filed another, "substantially similar," indictment. *Id.* During arraignment on the second indictment, held before a magistrate, the Government admitted that the earlier charges were dismissed because the Government was dissatisfied with the jury that had been empaneled. *Id.* The *defendant* unsuccessfully moved for dismissal of the second indictment, and the Fifth Circuit reversed, observing that "[a]lthough the burden of proof is not on the prosecutor to prove that dismissal is in the public interest, the prosecutor is under an obligation to supply sufficient reasons—reasons that constitute more than 'a mere conclusory interest.' " 693 F.2d at 352 (quoting *Hamm,* 659 F.2d at 631 n. 23) (footnotes omitted). The court held that the second indictment should have been dismissed, based upon the finding that the record revealed "sufficient evidence to overcome the presumption that the Government made the motion to dismiss the indictment in good faith." *Id.* at 353. Based upon the Government's

admission that "discontent with the jury" was the sole reason for dismissal and its finding that "[t]he record on appeal exposed that the true reason for dismissal was in derogation of defendant Salinas' rights," the *Salinas* court opined that it had "no choice but to vindicate the purpose of Rule 48(a) to protect the defendant's rights." *Id.*

█ In the instant case, the Government posits that dismissal is being sought to refer the case "to the Southern District of Texas where venue lies." Court Order, Oct. 31, 2001 at Ex. A. To support this action, the Government propounds that "it cannot prove venue under the Superceding Indictment against [D]efendant Sotelo" in the Western District of Texas. Gov't Br. in Resp. to Ct.'s Order Concerning Order of Dismissal ("Gov't Brief") 5. Specifically, the Government argues that under the Second Superceding Indictment, Defendant Sotelo now faces only "substantive counts of harboring aliens, transporting aliens, and misprison [sic] of a felony, which occurred *solely within the Southern District of Texas.*" *Id.* (emphasis added).

The Government makes this claim despite the language of the Superseding Indictment itself, which unambiguously states in Count One that Defendant Sotelo is charged with harboring aliens "in the Western District of Texas and elsewhere." Second Superceding Indictment 1. Count Three also charges Defendant Sotelo with misprison of a felony "in the Western District of Texas and elsewhere," while Count Two charges Defendant Sotelo with the transportation of aliens *only* "in the Western District of Texas. *Id.* at 2. If the Government has now assumed the position that venue cannot be proven against Defendant Sotelo, the Court fails to understand why the matter was recently brought before a Grand Jury of the West-

ern District of Texas *again.* More importantly, if the Government's evidence so manifestly demonstrates that Defendant Sotelo committed crimes exclusively in the Southern District of Texas, the Court fails to understand why a Grand Jury would nevertheless indict him for one crime allegedly committed solely in the Western District of Texas and two crimes allegedly committed in the Western District and elsewhere. *See Id.* at 1–2.

The Court cannot ignore the fact that the Government has already had more than three years to develop its case against Defendant Sotelo. Strikingly, at no point until the Government proffered its proposed Order, less than two months after the Court denied the Government's attempt to sever Defendant Sotelo from the consolidated defendants,[12] and on the eve of Defendant Sotelo's second trial before the Court, has the Government stated that venue cannot be proven against him. Perhaps most importantly, the Government's sudden admission of improper venue has not prompted the Government to seek dismissal of the indictment against Defendant Sotelo *with prejudice.* To the contrary, the Government has plainly communicated its intent to refer the case to the Southern District of Texas for further prosecution. Court Order, Oct. 31, 2007 at Ex. A. This only serves to highlight the Fifth Circuit's holding that "[i]t is precisely because a dismissal under Rule 48(a) does not bar a subsequent prosecution that the rule requires the consent of the court." *U.S. v. Davis,* 487 F.2d 112, 118 (5th Cir. 1973).

Were the Court to allow the Government to engage in such conduct, the Court would be sanctioning the Fifth Circuit's own definition of prosecutorial harassment

as outlined in *Salinas*—the "charging, dismissing, and subsequently commencing another prosecution at a *different time or place* deemed more favorable to the prosecution." *Salinas,* 693 F.2d at 351 (emphasis added). So, while the Court remains mindful that the "Executive remains . . . . the first and presumptively the best judge of whether a pending prosecution should be terminated," [13] the Court must employ the limited discretion accorded by Congress through Rule 48(a) to check the abuse of Executive perogative in this case. *See In re Washington,* 544 F.2d at 209. Only by denying the Government's proposed "Order of Dismissal" can the Court fulfill its congressionally mandated, primary role under Rule 48(a) to protect Defendant Sotelo against prosecutorial harassment.[14]

### 2. Lack of a motion or opposition thereto

Fifth Circuit case law concerning Rule 48(a) has often focused on the presence of a criminal defendant's opposition to a Government motion to dismiss an indictment. *See Hamm,* 659 F.2d at 625; *Welborn,* 849 F.2d at 980. Under Fifth Circuit precedent, should a criminal defendant consent to a government motion to dismiss prosecution, "[t]he district court may not deny [leave of court] . . . . except in those extraordinary cases where it appears the prosecutor is motivated by considerations clearly contrary to the manifest public interest." *Hamm,* 659 F.2d at 628. Even under this elevated standard, however, the "trial court, in extremely limited circumstances in extraordinary cases, may deny the motion when the prosecutor's actions clearly indicate a 'betrayal of the public interest.'" *Id.* at 629 (citing *Cowan,* 524 F.2d at 514). Although the lack of a filed

12. Doc. No. 353.

13. *Cowan,* 524 F.2d at 513.

14. *See infra,* note 2.

motion to dismiss renders this argument largely philosophical, a review of existing case law serves to differentiate these prior cases from the Court's current ruling.

In *Hamm*, the Fifth Circuit decided a conflict between a trial judge and the Government over "the right of the Government to dismiss indictments against defendants who, after having pleaded guilty to criminal charges, cooperated with the Government in the prosecution of the leaders of a large drug-smuggling conspiracy." *Id.* at 625. Faced with the plea agreements entered into by the defendants and the Government, the district judge declared that he would not be bound by the agreements, denied the Government's motion to dismiss the indictments, refused to permit the defendants to withdraw their pleas, and sentenced them to terms of imprisonment. *Id.* at 627–28. Faced with defendants who *consented* to the dismissal of the indictments against them, the *Hamm* court ruled that district courts could not deny Government motions to dismiss in such instances "except in those extraordinary cases where it appears the prosecutor is motivated by considerations clearly contrary to the manifest public interest." *Id.* at 628 (citations omitted). By crafting this holding, the court felt that Rule 48(a) could be construed as preserving "the essential judicial function of protecting the public interest in the even-handed administration of criminal justice without encroaching on the primary duty of the Executive to take care that the laws are faithfully executed." *Id.* Finding "no evidence that the prosecutor was motivated by any considerations other than his evaluation of the public interest," the court reversed the district court. *Id.* at 630.

In *Welborn*, the Fifth Circuit faced another instance where the Government moved to dismiss an indictment without prejudice. *See Welborn*, 849 F.2d at 980.

After an initial indictment charged each of the five defendants with three counts, the Government moved to dismiss the indictment without prejudice. *Id.* at 982. Seven months later, the Government returned a fifty-seven (57) count indictment against four of the defendants. *Id.* The defendants responded with a motion to dismiss the second indictment based on the theories that "the district court abused its discretion by dismissing the first indictment over the defendants' objection without requiring the Government to furnish more than a conclusory justification," that "bad faith prompted the government to request dismissal of the first indictment," and a third theory not relevant to the present discussion. *Id.* Following a hearing on the defendants' motions, the district court dismissed the second indictment based on the Government's inadequate statement of reasons as to why dismissal and reindictment would be sought, and as a sanction against the Government for not producing evidence sought by the court. *Id.* at 982–83.

In vacating the district court's ruling, the *Welborn* court fashioned two distinct Rule 48(a) holdings. *Id.* at 984. First, the court held that "if a defendant, without justification, does not contest dismissal[,] the presumption of good faith permits the court to dismiss without prejudice and the defendant waives his right to later object to the government's motives." *Id.* Next, the court held that where a "a defendant contests dismissal and the district court errs by not requiring the prosecution to furnish more than a conclusory reason to support its motion, the dismissal must be treated as though it were with prejudice." *Id.* The court tempered this holding by stating that this dismissal with prejudice would only attach "where the prosecution fails to offer sufficient justification for seeking dismissal when it reindicts or the

error prejudiced the defendant's ability to attack the prosecutor's motives."

These cases offer guidance on the issue under review in two respects. First, the Court notes that the elevated scrutiny outlined in *Hamm* does not translate to the current case. Because this case does not represent one of the "extremely limited circumstances" or "extraordinary cases" where the Court seeks to deny a motion to dismiss over a defendant's consent, the court may act to vindicate Defendant Sotelo's rights without making a finding that the Government's actions "clearly indicate a 'betrayal of the public interest.'" *See Hamm*, 659 F.2d at 629 (citations omitted). Rather, the Court can deny the motion based on the Government's bad faith, as manifested through its acts of prosecutorial harassment. *See Salinas*, 693 F.2d at 351. Had Defendant Sotelo failed to contest a filed motion to dismiss, then the Government's presumption of good faith would attach, thereby allowing the court to dismiss the indictment and acting as a waiver of Defendant Sotelo's right to later object to the Government's motives. *See Welborn*, 849 F.2d at 984.

Next, the *Welborn* court instructs that the Government must "furnish more than a conclusory reason to support its motion." *Id.* This holding proves particularly striking in the instant case, since the Government initially entered neither a motion nor any rationale for the dismissal beyond the conclusory statement that venue now lies in a different district. Court Order, Oct. 31, 2007 at Ex. A. Had the Government filed this proposed Order as a motion to dismiss with the Clerk of Court, not only would Defendant Sotelo have been notified, but his contest to the dismissal would have mandated that the Court treat the conclusory motion to dismiss as a motion to dismiss *with prejudice*. *See Welborn*,

849 F.2d at 984. Nevertheless, the Government did not enter a motion and Defendant Sotelo was not given an opportunity to contest. In fact, without the Court's request for clarification of the Government's proposed Order,[15] the Government would have presented the Court with nothing more than the conclusory type of reasoning prohibited by the ruling in *Welborn*. *Id.* Based upon the reasoning presented within the Government Brief, the Court finds that the Government has furnished more than conclusory reasons as required by *Welborn*, but more importantly, based on this same reasoning, the Court finds that the Government is acting to harass Defendant Sotelo, and as such, the Court must deny the proposed Order to Dismiss.

### 3. Fulfilling the courts' primary duty to protect criminal defendants from prosecutorial harassment

The genius of the United States Constitution remains its allocation of powers between three coordinate branches of government, with each possessing the power to check the others' actions without the additional latitude to overcome the others' legitimate, constitutional prerogatives. Rule 48(a), limited as it may be, represents one way in which the district courts may check abuses of the Executive. *See Cowan*, 524 F.2d at 511. Or, as the Fifth Circuit has stated, "we think it manifestly clear that the Supreme Court intended to clothe the federal courts with a discretion broad enough to protect the public interest in the fair administration of criminal justice." *Id.* at 512. Yet, the same court has also cautioned that "this is not to say that the Rule was intended to confer on the Judiciary the power and authority to usurp or interfere with the good faith exercise of the Executive power to take care that the

---

**15.** Doc. No. 213.

laws are faithfully executed." *Id.* at 513. What the Fifth Circuit has unambiguously found is that "the history of the Rule belies the notion that its only scope and purpose is the protection of the defendant." *Id.* at 512. If this Rule 48(a) discretion, promulgated by the Supreme Court and ratified by Congress, can be considered anything more than mere surplusage, then that power must be recognized in this case.

To carry out its primary duty to protect Defendant Sotelo from prosecutorial harassment, the Court must deny the Government's proposed Order to Dismiss. Despite the presumption in a Rule 48(a) motion for dismissal that the Government has acted in good faith, the presumption may be rebutted by a showing of bad faith, or "when the motion to dismiss contravenes the public interest because it is not in good faith." *Salinas,* 693 F.2d at 352. The centerpiece of bad faith—prosecutorial harassment—occurs when the Government undertakes a cycle of "charging, dismissing, and subsequently commencing another prosecution at a *different time or place* deemed more favorable to the prosecution." *Id.* at 351.

Each of the elements of prosecutorial harassment has been presented in this case. *See id.* The Government has already charged,[16] dismissed, and refiled another indictment [17] against Defendant Sotelo. The Second Superceding Indictment, handed down on August 1, 2007,[18] came on the heels of a nearly eight-week mistrial which produced a trial transcript of over 5,000 pages. Now, after the expenditure of tremendous judicial resources in the Western District of Texas, and in spite of a Grand Jury's delivery of a Second Superceding Indictment against Defendant Sotelo based on charges occurring in the Western District, the Government now claims that it "cannot prove venue" against him in this district. Gov't Brief 5. As a result, the Government would have the Court refer the case to the "Southern District of Texas where venue lies." Court Order, Oct. 31, 2001 at Ex. A. By making this request of the Court, the Government has patently and incontrovertibly engaged in each component of the Fifth Circuit's definition of bad faith. Namely, the Government has charged, dismissed, and recharged, with the hopes of procuring the Court's leave now to dismiss the Second Superceding Indictment in order to further prosecute Defendant Sotelo in the Southern District of Texas. *See Salinas,* 693 F.2d at 351. Were the Court to grant the Government's proposed Order, it would act in clear contravention of binding Fifth Circuit precedent. *See id.* Because the Court refuses to do so, and because the Court remains mindful of its primary responsibility under Rule 48(a) to protect Defendant Sotelo's rights, the Court must deny the Government's proposed Order of Dismissal.

## II. CONCLUSION

For the reasons contained herein, and acting under the discretion invested in the trial courts by the Supreme Court and Congress through Rule 48(a) of the Federal Rules of Criminal Procedure, the Court hereby **DENIES** the Government's proposed "Order of Dismissal" as to Defendant Roland Sotelo.

**SO ORDERED.**

---

16. Doc. No. 3.

17. Doc. No. 189.

18. *Id.*