# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 163

### OCTOBER TERM, A.D. 2013

### December 31, 2013

ANDREW MASCARENAS,

Appellant
(Defendant),

v.

S-13-0027

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Carbon County*
*The Honorable Wade E. Waldrip, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*

Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jeffrey S. Pope, Assistant Attorney General; Prosecution Assistance Program: Darrell D. Jackson, Faculty Director, David E Singleton, Student Director, Sophie Dornbach, Student Intern. Argument by Ms. Dornbach.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**VOIGT, Justice.**

[¶1]    The appellant, Andrew Mascarenas, was convicted of felony driving while under the influence of alcohol, reckless driving, driving with a suspended license, and driving without an interlock device.  He appeals these convictions, arguing that his constitutional right to a speedy trial was violated and the State failed to present sufficient evidence to support the reckless driving conviction.[1]  We affirm.

## ISSUES

[¶2]    1.  Did the appellant receive his constitutional right to a speedy trial?

2.  Did the State present sufficient evidence to support the appellant's reckless driving conviction?

## FACTS

[¶3]    In the early morning hours of October 15, 2011, Lieutenant Hooper of the Rawlins Police Department was standing outside of his patrol vehicle in the parking lot of a gas station in Rawlins, Wyoming.  The sound of squealing tires caught his attention, and when he turned to the direction of the sound, he saw a vehicle go over a curb and into a yard.  Lieutenant Hooper immediately drove the one city block to the location of the vehicle and found that the vehicle had crashed into a tree and its axle was broken.  He observed a man wearing a dark-colored shirt, later identified as the appellant, exit the driver's side of the vehicle.  Lieutenant Hooper also saw a man wearing a white t-shirt, identified as the appellant's brother, outside of the vehicle.  When Lieutenant Hooper spoke with the men, he immediately suspected that alcohol had been a factor in the crash because both men smelled of alcohol, had poor balance while standing, and slurred their speech.  Although the appellant denied being the driver, his brother stated that, "[the appellant] struck a tree."  The appellant was placed under arrest for driving while under the influence of alcohol, but refused to consent to a breath test.  Thereafter, Lieutenant Hooper obtained a warrant from the circuit court judge to obtain a sample of the appellant's blood for chemical testing.

[¶4]    The appellant was charged with felony driving while under the influence of alcohol to a degree which rendered him incapable of safely operating a motor vehicle,

---

[1] In his brief, the appellant also argued that his convictions should have merged for the purposes of sentencing because all of the convictions stemmed from the same conduct.  However, at oral argument, the appellant conceded that our recent decision in *Sweets v. State*, 2013 WY 98, 307 P.3d 860 (Wyo. 2013), is directly on point and resolves the issue contrary to his position.  The appellant urged this Court to reconsider its holding in *Sweets*.  We decline to do.  Thus, as conceded by the appellant, and based upon our holding in *Sweets*, the appellant's sentences were not subject to the merger doctrine and he was properly sentenced by the district court.

1

reckless driving, driving while under suspension, and driving without an interlock device. Once the State received the results of the appellant's blood test, which showed a blood alcohol concentration of .23%, the State filed a new Information, which contained the same charges as in the original Information, but also charged the appellant with driving a vehicle while having a blood alcohol content that exceeded .08%.[2]

## DISCUSSION

### *Did the appellant receive his constitutional right to a speedy trial?*

[¶5]    The appellant claims his constitutional right to a speedy trial was violated because he spent 332 days incarcerated between the time of his arrest and the date his trial began. We review the constitutional question of whether a defendant has been denied a speedy trial in violation of the Sixth Amendment to the United States Constitution *de novo*. *Potter v. State*, 2007 WY 83, ¶ 14, 158 P.3d 656, 660 (Wyo. 2007).

[¶6]    Before we begin our analysis, a brief review of the procedural history in the district court is helpful.  The appellant was arrested on October 15, 2011, and on October 17, 2011, the State filed an Information, charging him with felony driving while under the influence, reckless driving, driving with a suspended license, and driving without an interlock device.  The appellant waived his preliminary hearing on October 26, 2011, was arraigned in the district court on November 14, 2011, and a trial date was set for April 24, 2012.  On December 12, 2011, the appellant filed a *pro se* motion to dismiss his court-appointed attorney and, thereafter, continued to file various *pro se* motions seeking discovery and to have his case dismissed.  On January 23, 2012, the district court held a hearing to hear the appellant's reasons for wanting to terminate the services of his counsel.  The appellant's primary grievance with his trial counsel was that he felt counsel was unprepared to defend him during the preliminary hearing, thus convincing the appellant to waive the hearing, and that he was unprepared to defend him at his

---

[2] The relevant portions of Wyo. Stat. Ann. § 31-5-233 (LexisNexis 2013), which prohibits driving while under the influence of alcohol state:

> (b)    No person shall drive or have actual physical control of any vehicle within this state if the person:
>
> (i)    Has an alcohol concentration of eight one-hundredths of one percent (0.08%) or more;
>
> . . . .
>
> (iii)   To a degree which renders him incapable of safely driving:
>
> (A)   Is under the influence of alcohol[.]

arraignment. After a lengthy discussion, which included multiple warnings from the district court regarding the dangers associated with *pro se* representation, the district court granted the appellant's request to proceed *pro se*. Thereafter, the appellant continued to file motions to dismiss the Information on various grounds.

[¶7]     On February 6, 2012, the State filed a new Information and moved to dismiss the original Information against the appellant. Originally, the State charged the appellant with driving while under the influence of alcohol pursuant to Wyo. Stat. Ann. § 31-5-233(b)(iii)(A). However, after receiving the results of the appellant's blood test, the State also charged the appellant with driving while under the influence of alcohol pursuant to Wyo. Stat. Ann. § 31-5-233(b)(i). A preliminary hearing for the new Information was held on February 14, 2012, and the appellant was bound over to the district court. An arraignment was held on March 19, 2012, where the appellant, again, stated his desire to proceed *pro se*. The district court asked the appellant if he believed his "rights have been prejudiced by the filing of this second complaint," to which the appellant responded he did not. However, the appellant then expressed concern about his "speedy trial." The district court told the appellant to put his motion in writing and it would be considered at the appropriate time. A trial was then set for September 11, 2012.

[¶8]     Between the time the new charges were filed and the time of trial, the appellant filed twenty motions. Thirteen were requests to dismiss the charges, three of which were based upon speedy trial. On June 13, 2012, the district court held a hearing regarding eleven of those motions, but the majority of the hearing was spent discussing the speedy trial issue. The State explained that the alternative charge of driving while under the influence of alcohol was based upon new evidence, and the State chose to file a new Information instead of amending the original so that the appellant could have a preliminary hearing on the new charges. The district court concluded that, under Wyoming Rule of Criminal Procedure 48 and prevailing federal guidance, the appellant's right to a speedy trial had not been violated.

[¶9]     First, it is important to note that the appellant is raising a speedy trial issue only under the mandates of the Sixth Amendment to the United States Constitution. While Wyoming Rule of Criminal Procedure 48 also dictates speedy trial requirements, the appellant does not allege, and we do not find, that rule was violated. Thus, our discussion will focus solely on the constitutional requirements.

[¶10] When reviewing a constitutional speedy trial claim, we adhere to the test established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See Berry v. State*, 2004 WY 81, ¶ 31, 93 P.3d 222, 230 (Wyo. 2004). That test requires us to consider four factors in determining whether a speedy trial violation occurred: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. *Id.* at ¶ 31, at 230-31. "These factors must be considered together and balanced in relation to all

3

relevant circumstances. The burden of proving prejudicial delay from a speedy trial violation lies with [the appellant]." *Id*. at ¶ 31, at 231 (citations omitted). However, "the burden is on the State to prove that delays in bringing a defendant to trial are reasonable and necessary." *Id*.

[¶11] When calculating the delay, the period we consider begins upon the filing of the criminal complaint or the defendant's arrest—whichever occurs first. *Strandlien v. State*, 2007 WY 66, ¶ 8, 156 P.3d 986, 990 (Wyo. 2007). Further,

> [w]e have recognized that when one charge is dismissed and supplanted by another, the constitutional speedy trial clock is not affected. *Caton v. State*, 709 P.2d 1260, 1264 (Wyo. 1985)[.] Under such circumstances, "the periods of formal charge by a single sovereign for the same criminal act are tacked [together] even if the charges are different." *Id*.

*Id*. at ¶ 8, at 990. Here, the appellant was arrested on October 15, 2011, and he was incarcerated continuously until his trial began on September 11, 2012, for a total of a 332 day delay.

[¶12] This Court has never held that a certain length of delay automatically amounts to a speedy trial violation. *Berry*, 2004 WY 81, ¶ 32, 93 P.3d at 231. Some delays are so protracted that they must be considered presumptively prejudicial and weighed heavily in favor of the defendant in the balancing inquiry with the other factors. *Id*. at ¶¶ 32-33, at 231-32. However, other delays are not so long as to be presumptively prejudicial, but still require further analysis of the remaining speedy trial factors. *Id*. at ¶ 34, at 232. While we do not find a delay of 332 days presumptively prejudicial, we do believe, consistent with prior case law, that the delay is long enough to warrant analysis of the other speedy trial factors. *See Boucher v. State*, 2011 WY 2, ¶ 11, 245 P.3d 342, 349 (Wyo. 2011) (delay of 2,971 days is presumptively prejudicial); *Strandlien*, 2007 WY 66, ¶ 9, 156 P.3d at 990 (delay of 762 days is presumptively prejudicial); *Berry*, 2004 WY 81, ¶ 34, 93 P.3d at 232 (delay of 720 days is presumptively prejudicial); *Potter*, 2007 WY 83, ¶ 35, 158 P.3d at 665 (delay of 362 days warrants examination of the other factors); *Whitney v. State*, 2004 WY 118, ¶ 40, 99 P.3d 457, 471 (Wyo. 2004) (delay of 374 days sufficient to trigger an analysis of remaining speedy trial factors); *Osborne v. State*, 806 P.2d 272, 277 (Wyo. 1991) (delay of 244 days was not presumptively prejudicial but was significant enough to warrant further analysis).

[¶13] The second speedy trial factor requires this Court to determine the reason for the delay in the appellant's trial, including which party was responsible for the delay. *Boucher*, 2011 WY 2, ¶ 13, 245 P.3d at 350. "Unquestionably, delays attributable to the [appellant] may disentitle him to speedy trial safeguards." *Berry*, 2004 WY 81, ¶ 18, 93 P.3d at 232. On the other hand,

4

[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Boucher*, 2011 WY 2, ¶ 13, 245 P.3d at 350 (quoting *Wehr v. State*, 841 P.2d 104, 112-13 (Wyo. 1992)).

[¶14] The State argues that some of the delay in the trial date is attributable to the appellant because he "filed thirty-four pretrial motions, which led to two hearings and many orders." While the record is clear that the appellant did file many motions during the pendency of his case, the record also is equally clear that those motions did not delay the trial dates as originally set by the district court. Instead, the district court held a hearing and ruled on the motions well within the time frame afforded by the trial date. We decline to find that the appellant's attempt diligently to represent himself in this circumstance should be weighed against him.

[¶15] The appellant argues that the delay of the trial lies entirely at the fault of the State because it made an "eleventh-hour" decision to amend the charges. In support of his position, he cites *Berry*, where we found that the delay attributable to amending the Information on the day trial was scheduled to begin should be weighed against the State because that decision "could have been made weeks, if not months, before trial was scheduled to begin." *Berry*, 2004 WY 81, ¶ 36, 93 P.3d at 232. Further, although we were not convinced that the delay was a deliberate attempt to hamper the defense, we also were not convinced the case was moving in a "continuing manner at a deliberate pace." *Id*. at ¶ 44, at 236 (quotation omitted).

[¶16] We find the circumstances here dissimilar to those presented in *Berry*. Despite the appellant's contrary assertion, the State's decision to file a new Information against the appellant cannot be characterized as an "eleventh-hour" decision. The new charges were filed on February 6, 2012—two and a half months before the original trial was set to begin. The new charges were appropriate because the State had received the results of the chemical test of the appellant's blood, which supported a charge that the appellant's blood alcohol concentration exceeded .08%. Further, the record also supports the fact that the State chose to file a new Information, instead of simply amending the existing one, for the appellant's benefit. The appellant discharged his attorney, in part, because his attorney convinced him to waive his preliminary hearing. The State presumed the appellant would not be in favor of an amendment to the Information, and with the re-

5

filing of the charges, the appellant would be entitled to a new preliminary hearing. There certainly is some truth to this line of thinking because the appellant did require the State to make a showing of probable cause at a preliminary hearing before the circuit court bound the charges over to the district court.

[¶17] We find the delay here akin to the delays in *Wehr* and *Boucher*. In *Wehr*, the State was preparing for the originally scheduled trial setting when it learned the sheriff was unable to locate a key witness. *Wehr*, 841 P.2d at 113. Instead of jeopardizing the prosecution, the State chose to dismiss the charges with the option to re-file them if the witness was located. *Id*. Seven days after dismissing the Information, the State re-filed the charges. *Id*. at 107. The Court concluded that the delay in trial was justified and should not be weighed against the State. *Id*. at 113. Further, the record did not show that "the State requested the dismissal in bad faith or with a sinister motive." *Id*.

[¶18] In *Boucher*, the State dismissed the charges against Boucher after his trial counsel raised questions about the dates alleged in the Information. *Boucher*, 2011 WY 2, ¶ 4, 245 P.3d at 347. The State then re-filed the charges with the correct and more precise dates of the alleged crimes. *Id*. at ¶ 5, at 347. We found that the delay that resulted from the dismissal and re-filing of the charges was a neutral factor because there was nothing in the record to support a claim that the delay was done to hamper the defense. Instead, it was done for the valid purpose of corroborating the precise dates of the alleged incidents. *Id*. at ¶ 15, at 351.

[¶19] Although the delay here is attributable to the State, due to the dismissal and re-filing of the Information against the appellant, we find this factor should be weighed neutrally in balancing the speedy trial factors. The record shows the action taken was due to the receipt of evidence not available at the time the State originally filed the Information. Further, the record shows the State did not take the action in an attempt to thwart the appellant's defense. In fact, the record demonstrates the State chose this route in order for the appellant to exercise all of his constitutional rights in his case; namely, his right to a preliminary hearing.

[¶20] The third factor that must be weighed is whether the appellant asserted his right to a speedy trial. *Berry*, 2004 WY 81 ¶ 31, 93 P.3d at 231. While this is a relevant and proper factor to consider, in addition to how vigorously it was asserted, "[i]t is not absolutely necessary that a defendant assert his right to speedy trial." *Id*. at ¶ 45, at 236; *see also Potter*, 2007 WY 83, ¶ 39, 158 P.3d at 666. The appellant did not assert his right to a speedy trial until after the State filed the new Information against him. At his arraignment, the appellant informed the district court that he did not believe his rights were being prejudiced by the filing of the second Information, but then tried to raise a speedy trial issue. Thereafter, the appellant filed a written motion to dismiss the charges based upon a speedy trial violation. Thus, the appellant did assert his right to a speedy trial. However, we find that the right was not vigorously asserted because he waited five

months after his arrest to assert that right, and only after the Information had been re-filed. Therefore, while this factor weighs in favor of the appellant, it is given little weight in the overall analysis. *Hall v. State*, 911 P.2d 1364, 1371 (Wyo. 1996).

[¶21] Finally, we must consider the prejudice the appellant suffered from the delay between his arrest and trial. *Berry*, 2004 WY 81, ¶ 31, 93 P.3d at 231. "We assess prejudice in light of the particular evils the speedy trial right is intended to avert: (1) lengthy pretrial incarceration; (2) pretrial anxiety; and (3) impairment of the defense." *Strandlien*, 2007 WY 66, ¶ 14, 156 P.3d at 991. As we have previously recognized, "the most serious is impairment of the defense 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Id*. (quoting *Whitney*, 2004 WY 118, ¶ 54, 99 P.3d at 475).

[¶22] The appellant claims he suffered prejudice because he was incarcerated from his arrest to his trial and that it necessarily impacted his employment opportunities, financial resources, and association. Certainly, being incarcerated for 332 days would have an impact on the appellant's finances, employment opportunities, and the ability to associate with whom he chooses, and those factors weigh in his favor. However, we cannot say that period of time is so lengthy to warrant a finding of substantial prejudice. *See Boucher*, 2011 WY 2, ¶ 19, 245 P.3d at 352. The appellant also asserts that he was prejudiced because the delay of the trial caused his witness's memory to fade. However, the record does not support that assertion. The witness did, in fact, testify he had a vague recollection of the events in question, but he never stated it was due to the passage of time. Instead, when the witness was asked how much he had to drink that night, he responded: "I drank -- well, I guess -- it takes a little bit of alcohol to get me to black out, and I must have drank a lot." Additionally, when asked who he was with that night, the witness said, "I don't know. Like I say, I was pretty well lit," and "I was intoxicated, and I don't really recall everything." Further, on cross-examination, the witness explained: "And I hate cops because it's pretty obvious that they beat me up all the time, and I don't remember -- when I was drunk like that, I don't remember. And I was blacked out. You know, some parts of it are vague and some parts I don't remember at all." The appellant has failed to demonstrate any extraordinary or unusual prejudice due to the length of his pretrial incarceration and he has failed to demonstrate that his defense was prejudiced by the passage of time.

[¶23] When weighing all four of the speedy trial factors together, we find the appellant's right to a speedy trial was not violated. While the delay between his arrest and trial was approximately eleven months, we find the delay was due to legitimate reasons and was not done to hamper the appellant's ability to defend himself. Further, we do not find the delay caused any extraordinary or unusual prejudice to the appellant's well-being while incarcerated or to the ability to present a defense at trial.

7

***Did the State present sufficient evidence to support the***
***appellant's reckless driving conviction?***

[¶24]  The appellant claims the State failed to present sufficient evidence to sustain his conviction for reckless driving.  When we review a sufficiency of the evidence claim,

> we examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it.  We do not consider conflicting evidence presented by the defendant.  We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt.  This standard applies whether the supporting evidence is direct or circumstantial.

*Sweets v. State*, 2013 WY 98, ¶ 14, 307 P.3d 860, 865 (Wyo. 2013) (quoting *Craft v. State*, 2013 WY 41, ¶ 18, 298 P.3d 825, 830-31 (Wyo. 2013)).

[¶25] In order to secure a conviction for reckless driving, the State needed to demonstrate that the appellant "[drove] any vehicle in willful or wanton disregard for the safety of persons or property[.]"  Wyo. Stat. Ann. § 31-5-229 (LexisNexis 2013).  We have long recognized that "willful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a probable (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its possible result."  *Wood v. City of Casper*, 683 P.2d 1147, 1149 (Wyo. 1984) (quoting *State v. Rideout*, 450 P.2d 452, 454 (Wyo. 1969)).  The appellant argues the State only presented evidence that he was driving while under the influence and crashed his vehicle into a tree, and that that evidence falls short of proving he drove in willful or wanton disregard for the safety of persons or property.

[¶26]  We acknowledge the appellant's contention that just because one is driving while under the influence of alcohol, he is not driving recklessly *per se*.  *See People v. Goldblatt*, 98 A.D.3d 817, 819 (N.Y. App. Div. 2012) ("One can drive recklessly without being intoxicated and, [conversely], one can drive while intoxicated without being reckless.").  However, the fact that a driver is intoxicated is certainly a factor to be considered when determining whether the totality of the facts show reckless driving.  *Id*.; *see also Norfolk v. State*, 360 P.2d 605, 607 (Wyo. 1961) ("So, generally speaking, the facts and circumstances in a particular case should be considered in order to determine whether or not the statute has been violated.").  Thus, if the State only had presented evidence that showed the appellant was driving while intoxicated, we may be inclined to find the State failed to demonstrate reckless driving.

[¶27] However, the State's evidence was not limited to the appellant's drunk driving. Lieutenant Hooper testified that, as he looked toward the sound of squealing tires, he observed a vehicle hit and go over a curb, drive into a yard, and strike a tree. While the witness's testimony does not include direct observation of things that often are associated with reckless driving (e.g., excessive speed, disregarding traffic signals), this testimony is sufficient for a jury to make a reasonable inference that squealing tires, driving over curbs and into yards, and crashing into tress would likely only occur because the driver was driving in a way that disregarded the safety of other people or property. Therefore, we find the State presented sufficient evidence to sustain the appellant's conviction for reckless driving.

## CONCLUSION

[¶28] Although the appellant was incarcerated for 332 days pending the commencement of his trial, we find his right to a speedy trial was not violated. Further, the State presented sufficient evidence to support his conviction for reckless driving. Affirmed.

9