2015 WY 60

**Marty Wayne RHODES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–14–0046.

Supreme Court of Wyoming.

April 27, 2015.

Representing Appellant: Office of the State Public Defender: Diane M. Lozano, State Public Defender; Patricia L. Bennett, Assistant Appellate Counsel. Argument by Ms. Bennett.

Representing Appellee: Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Joshua C. Eames, Assistant Attorney General. Argument by Mr. Eames.

Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.

BURKE, Chief Justice.

[¶ 1] Appellant, Marty Wayne Rhodes, challenges his convictions for child abuse and third-degree sexual abuse of a minor under Wyo. Stat. Ann. § 6–2–503(b)(i) and § 6–2–316(a)(iv) (LexisNexis 2011). He contends he was denied his rights to a speedy trial and to effective assistance of counsel. He also contends the evidence was insufficient to support his conviction for third-degree sexual abuse of a minor. We affirm.

### ISSUES

[¶ 2] Appellant presents the following issues:

1. Was Appellant denied his right to a speedy trial?
2. Did the State present sufficient evidence to sustain a conviction of sexual abuse of a minor in the third degree?
3. Was Appellant denied effective assistance of counsel?

The State phrases the issues in a similar manner.

### FACTS

[¶ 3] Appellant and the victim's mother, Tanya Van Patten, met in Arizona in 2006, when the victim was eight years old. Appellant and Ms. Van Patten subsequently married and had three children together between 2006 and 2011. During the majority of this time, the victim lived with Ms. Van Patten's parents in Jackson, Wyoming. In December 2011, the victim moved into Appellant's and Ms. Van Patten's home in Farson, Wyoming. The relationship between Appellant and Ms. Van Patten deteriorated, and Appellant moved out of the home in April 2012.

[¶ 4] On May 22, Appellant returned to the home. He began drinking and encouraged the victim, who was fourteen years old at the time, to drink with him. While the victim was sitting on the couch in the living room, Appellant pulled down the victim's shirt, exposing her breasts. As the victim tried to get up from the couch, Appellant pulled down her shirt a second time. Appel-

lant then followed the victim into the kitchen, where he pulled the victim's shirt down a third time and grabbed her breasts. He then picked the victim up and pinned her on the floor. The victim scratched at Appellant's face until Appellant released her. Appellant called the police claiming that he had been assaulted and, after law enforcement arrived, the victim and Ms. Van Patten were transported to a relative's home in Farson.

[¶ 5] Based on interviews with Appellant, the victim, and Ms. Van Patten, the State charged Appellant, on June 5, 2012, with attempted sexual abuse of a minor in the second degree, sexual abuse of a minor in the third degree, child abuse, and battery against a household member. Appellant was arraigned on these charges on July 12, 2012. A subsequent forensic interview with the victim, however, indicated that Appellant had solicited and conspired with Ms. Van Patten to commit sexual abuse against the victim. Ms. Van Patten was arrested and charged with similar crimes committed against her daughter.[1]

[¶ 6] As a result of the additional information obtained from the interview with the victim, as well as statements made by Ms. Van Patten while she was detained in the Sweetwater County Detention Center, the State voluntarily dismissed the action and refiled charges against Appellant on October 29, 2012. The new information added four more charges against Appellant—solicitation to commit sexual abuse of a minor in the first degree, solicitation to commit sexual abuse of a minor in the second degree, conspiracy to commit sexual abuse of a minor in the first degree, and conspiracy to commit sexual abuse of a minor in the second degree. On November 9, 2012, the State filed an amended information, adding the charge of sexual abuse of a minor in the first degree, based on interviews that had occurred at the detention center on October 26, and subsequent investigation. Appellant was arraigned on those charges on December 3, 2012. At the arraignment, Appellant's counsel orally asserted Appellant's right to a speedy trial. Ap-

pellant remained incarcerated from the time of his original arrest through disposition of his case.

[¶ 7] On March 29, 2013, Appellant filed a motion to dismiss the four original charges. He claimed that there had been a violation of his right to a speedy trial under the constitution and under W.R.Cr.P. 48(b)(2), which provides that "[a] criminal charge shall be brought to trial within 180 days following arraignment . . . ." The district court denied the motion.

[¶ 8] Appellant's trial began on May 13, 2013. After hearing testimony from numerous witnesses, including Appellant, Ms. Van Patten, and the victim, a jury found Appellant guilty of one count of child abuse and one count of third-degree sexual abuse of a minor. Appellant was acquitted on the remaining charges. The court sentenced Appellant to consecutive sentences of thirteen to fifteen years on the sexual abuse charge and four to five years on the child abuse charge. Appellant timely filed this appeal.

## DISCUSSION

### I. Right to Speedy Trial

[¶ 9] In his first issue, Appellant contends he was denied his right to a speedy trial under W.R.Cr.P. 48 and under the Sixth Amendment to the United States Constitution. The issue of whether the defendant has received a speedy trial is reviewed *de novo*. *Ortiz v. State*, 2014 WY 60, ¶ 32, 326 P.3d 883, 892 (Wyo.2014).

### A. W.R.Cr.P. 48

[¶ 10] Pursuant to W.R.Cr.P. 48(b)(2), a "criminal charge shall be brought to trial within 180 days following arraignment. . . ." For purposes of analyzing a speedy trial claim under Rule 48, we begin by calculating the time between the defendant's arraignment and trial, excluding the time periods specified in the rule. *Berry v. State*, 2004 WY 81, ¶ 21, 93 P.3d 222, 228 (Wyo.2004). In conducting a Rule 48 analysis, we have held that the speedy trial time

---

1. Ms. Van Patten ultimately entered into a plea agreement with the State. Under the agreement, the State recommended a six- to ten-year sen-

tence suspended in favor of eight years of probation in return for Ms. Van Patten's cooperation in the State's case against Appellant.

period begins anew when charges are re-filed against a defendant. *Berry,* ¶ 22, 93 P.3d at 228; *Alicea v. State,* 13 P.3d 693, 700 (Wyo. 2000); *Hall v. State,* 911 P.2d 1364, 1370 (Wyo.1996). As noted above, the State initially filed criminal charges against Appellant in June 2012. Appellant was arraigned on those charges on July 12, 2012, and those charges were dismissed on the State's motion on October 29, 2012. On the same day, the State filed a second information, and Appellant was arraigned on those charges on December 3, 2012. Appellant's trial commenced on May 13, 2013. The amount of time elapsed from Appellant's arraignment on the new charges, on December 3, 2012, and the beginning of his trial, on May 13, 2013, was 161 days.

[¶ 11] Appellant does not dispute that, under existing precedent, the delay did not result in a violation of W.R.Cr.P. 48. He claims, however, that we should depart from precedent holding that the 180–day period for determining whether Rule 48 has been violated begins anew after charges are re-filed. In support of this argument, Appellant asserts that "Rule 48 does nothing to limit the number of times the State can dismiss and refile a charge, therefore does nothing to protect the accused, and affords the State an almost unlimited amount of time to build a case and hold a defendant in jail while it does so." Appellant also asserts that, if the speedy trial period begins anew when charges are re-filed, there is no need for Rule 48(b)(3)(C) to provide that "[t]he time between the dismissal and the refiling of the same charge" shall be excluded in computing the speedy trial period.

[¶ 12] As indicated in the discussion above, Rule 48 does not directly address the issue of whether the 180–day speedy trial period set forth in the Rule begins anew when charges are re-filed against a defendant. In those jurisdictions where this question is not specifically addressed by rule or statute, courts have taken different approaches in determining how the speedy trial period should be calculated.

> As for trial on a charge earlier dismissed, those statutes and court rules which specifically address this situation often ensure that the prosecutor cannot circumvent speedy trial requirements by a process of dismissal and recharging, typically by asserting that the time does not begin running anew (as might well be the case if dismissal was on motion of the defendant) but instead is merely interrupted between dismissal and recharging. When these matters are not addressed in the speedy trial statute or court rule, then they must be addressed by the courts when such situations arise, which can produce various results; especially as to the troublesome matter of prosecutor dismissal and recharging, there is "no uniformity in approach."

5 Wayne R. LaFave, et al. *Criminal Procedure* § 18.3(c) (3d ed. updated 2014) (footnotes omitted). In *Curley v. State,* 299 Md. 449, 474 A.2d 502, 505 (1984), the Maryland Court of Appeals found that "the approaches taken in other jurisdictions can be divided into three broad, if not always clearly bounded, categories." In the first category of cases, courts hold that the speedy trial period begins with the original charges, is neither tolled nor ended by a dismissal, and the same period continues to run when charges are re-filed against a defendant. *Id.* The court noted that the rationale for this approach "appears to be that the state should not be permitted to avoid the effect of the running of the speedy trial period" through dismissal and re-charging. *Id.* at 506. The second category of cases identified in *Curley* consists of jurisdictions which hold that the speedy trial period begins with the original charges, but is tolled during the time when no charges are outstanding. *Id.* Jurisdictions adopting this approach have found that "refusing to include the time under the earlier indictment 'would subvert the policy of the speedy trial statutes by automatically providing prosecutors a new ... period in which to bring an accused to trial, irrespective of the amount of ... delay involved in the prior ... proceedings.' " *Id.* (quoting *State v. Bonarrigo,* 62 Ohio St.2d 7, 10, 402 N.E.2d 530, 534 (1980)). Finally, courts in the third category hold that the speedy trial period begins after charges are dismissed and later re-filed. *Curley,* 474 A.2d at 506. After reviewing these three approaches, the court ultimately

determined that the approach taken by cases in the third category was in accord with Maryland law. *Id.* at 507.

[¶ 13]   Our precedent has adopted the approach taken by *Curley* and other cases in the third category. In *Hall,* we explained that requiring the speedy trial period to begin anew when charges are re-filed is implied by the language of the Rule:

> Rule 48(b)(8) [now (b)(7)] provides that upon dismissal under the rule, the State is not barred from again prosecuting the defendant for the same offense unless the defendant made a written demand for speedy trial or can demonstrate prejudice from the delay. Implied in that reading is that the 120-day period will begin anew after each filing. To interpret otherwise would make it impossible to dismiss on the 120th day as required in Rule 48(b)(6) [now (b)(5)] and later recharge as allowed in (b)(8) [now (b)(7)] because there would be no time remaining between a new arraignment and the trial.

*Id.,* 911 P.2d at 1370.[2]   We agree with Appellant that W.R.Cr.P. 48(b)(3)(C), considered in isolation, suggests that the drafters of the Rule intended the speedy trial period to include the time from the defendant's original arraignment to dismissal of the charges against him. Ultimately, however, that provision must be interpreted in light of the structure of the entire Rule, which, as we determined in *Hall,* indicates that the speedy trial period will begin anew after each filing.

[¶ 14]   We note, however, that jurisdictions holding that the speedy trial period begins anew when charges are re-filed generally recognize an exception in cases where the intent of the dismissal is to evade the requirements of the applicable speedy trial rule or statute. As noted in *Curley,*

> The jurisdictions in [the] third category, as well as the jurisdictions which toll the running of the statutory trial period for the time between charging documents, generally recognize an exception where the prosecution's action is intended or clearly operates to circumvent the statute or rule

prescribing a time limit for trial. As the cases put it, the prosecution must be acting in "good faith" or so as to not "evade" or "circumvent" the requirements of the statute or rule setting a deadline for trial.

474 A.2d at 507 (collecting cases). The court found that, without this exception, Maryland's speedy trial rules would "largely be rendered meaningless" because the state could regularly evade the rules by dismissing and re-filing charges against a defendant. *Id.* at 508.

[¶ 15]   In light of our precedent holding that the speedy trial period begins anew when charges are re-filed against a defendant, there is merit to an exception for cases in which the dismissal and re-filing of charges is intended or clearly operates to circumvent the requirements of Rule 48. We note that recognizing such an exception would be consistent with Wyoming precedent interpreting W.R.Cr.P. 48(a), which permits the State to dismiss charges against a defendant "by leave of court." In *Graham v. State,* 2011 WY 39, 247 P.3d 872 (Wyo.2011), we held that the language of W.R.Cr.P. 48(a) gives the court discretion to deny a motion to dismiss under the Rule.

> Graham contends that the district court's refusal to grant that motion to dismiss without prejudice was an abuse of discretion that violated the separation of powers doctrine. We are not persuaded that Graham can use the district court's refusal to grant the prosecution's motion to dismiss as a sword in these circumstances. Graham did not object to the district court's denial of the motion to dismiss. That is, Graham cannot construct an injury to her defense strategy based upon the district court's insistence that the case proceed to trial in accordance with the planned schedule for that trial and in a manner that protected her rights vis-a-vis W.R.E. 404(b) evidence. In 3B Charles Alan Wright, Nancy J. King, and Susan R. Klein, *Federal Practice and Procedure: Criminal 3d* § 812, at 323–32 (2004 and

---

**2.**  The prior version of Rule 48 provided that a criminal charge shall be brought to trial within

120 days following arraignment.

Supp. 2010), we found this very instructive authority:

> At common law the prosecutor could enter a nolle prosequi without approval of the court. This was the rule recommended to the Supreme Court by the Advisory Committee on Criminal Rules, but the Court itself, on promulgating the rules, added the requirement in Rule 48(a) that only by leave of court could the prosecution file a dismissal. The reason for this action by the Court is unclear. It has been read as an expression by the Court of a belief that entry of a nolle prosequi should be a permissive right only, and as intended to prevent harassment of a defendant by charging, and then dismissing without placing a defendant in jeopardy.
>
> It is difficult indeed to see any real or substantial change or benefit achieved by Rule 48(a). The court is powerless to compel a prosecutor to proceed in a case that he believes does not warrant prosecution. If the court refuses consent to dismiss, the prosecutor in his opening statement to the jury and in his presentation of evidence can indicate to the jury the considerations that should work an acquittal.
>
> Nevertheless the requirement of leave is in the rule, and each judge is left to struggle with its uncertainties as best he can. Since the court must exercise a sound judicial discretion in considering a request for dismissal, it must have factual information supporting the recommendation. Leave will be granted if the government is without sufficient evidence to obtain a conviction or if dismissal is sought for some other bona fide reason that does not involve harassment of the defendant. Courts have expressed willingness to deny a prosecutor's motion if it was "clearly contrary to manifest public interest," although some courts require, in addition, a showing of bad faith.

Given the circumstances that exist here, we hold that the district court did not abuse its discretion in denying the motion to dismiss without prejudice, that Graham was not injured in any way by the district court's ruling and, further, that the district court's action did not violate the separation of powers doctrine.

*Id.,* ¶¶ 10–11, 247 P.3d at 875. Recognizing an exception to the rule that the 180–day speedy trial period begins with the second prosecution in cases where a dismissal is intended to circumvent the speedy trial period would be consistent with the discretion to deny a motion to dismiss under Rule 48(a) to prevent harassment of the defendant. Finally, we note that such an exception would give meaning to W.R.Cr.P. 48(b)(3)(C), as that provision would operate to toll the time between dismissal and re-filing in those cases where the exception applies.

[¶ 16] Ultimately, however, we need not adopt the exception identified in *Curley* in the present case. The issue of whether to adopt the exception was not briefed by either party. Further, we note that Appellant appears to have made no objection to the State's dismissal of the original charges, and he makes no claim that the State's request for a dismissal was made in bad faith. Considering the absence of facts or argument demonstrating the necessity of adopting an exception to the rule that the 180–day speedy trial period begins anew after charges are re-filed against a defendant, we conclude that any attempt to do so in the present case would be premature. Accordingly, for the foregoing reasons, we decline Appellant's request to depart from our precedent interpreting Rule 48.

**B. Constitutional Right to a Speedy Trial**

[¶ 17] We turn next to the question of whether Appellant's constitutional right to a speedy trial was violated. The right to a speedy trial is guaranteed under the Sixth Amendment to the United States Constitution. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors that must be considered in a constitutional speedy trial analysis are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Id.,* 407 U.S. at 530, 92 S.Ct. at 2192. The

ultimate "inquiry is whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial." *Warner v. State,* 2001 WY 67, ¶ 10, 28 P.3d 21, 26 (Wyo.2001). Under a constitutional analysis, the "speedy trial clock begins to run at the time of arrest, information, or indictment, whichever occurs first." *See Ortiz,* ¶ 40, 326 P.3d at 893. We have recognized that "when one charge is dismissed and supplanted by another, the constitutional speedy trial clock is not affected. Under such circumstances, 'the periods of formal charge by a single sovereign for the same criminal act are tacked [together] even if the charges are different.' " *Mascarenas v. State,* 2013 WY 163, ¶ 11, 315 P.3d 656, 661 (Wyo. 2013) (quoting *Strandlien v. State,* 2007 WY 66, ¶ 8, 156 P.3d 986, 990 (Wyo.2007)) (internal citation omitted). In the present case, the State originally charged Appellant on June 5, 2012, and he was convicted on May 21, 2013, resulting in a delay of 351 days.

■ [¶ 18] The parties agree that, while this period is not presumptively prejudicial, a delay of 351 days warrants further analysis.[3] Appellant contends that the remaining factors weigh in favor of finding a violation of his constitutional right to a speedy trial. He notes that, with respect to the second factor, the delay was caused by the State's decision to dismiss and re-file the charges. With respect to the third factor, he points out that he asserted his right to a speedy trial orally at the arraignment on December 3 and in his March 29 motion to dismiss the charges against him. Appellant contends he was prejudiced by the delay because he "lost his close relationship with his children, his job, his home, his ability to continue to care for his mother who is in delicate health, and contact with his brother." He also claims he was prejudiced because he was unable to call his brother as a witness at his trial due to his brother's arrest and incarceration. Appellant asserts that his brother "would have offered valuable testimony at trial regarding

the situation in the home and Mr. Rhodes' relationship with [the victim]."

■ [¶ 19] The State concedes that the second and third factors in the constitutional analysis weigh slightly in favor of Appellant because the district court found that the delay was caused by the State's ordinary negligence due to an overcrowded criminal caseload and because Appellant asserted his right to a speedy trial. The State contends, however, that Appellant has failed to establish that he was prejudiced by the delay. We agree with the State.

■ [¶ 20] We assess prejudice "in light of the particular evils the speedy trial right is intended to avert: (1) lengthy pretrial incarceration; (2) pretrial anxiety; and (3) impairment of the defense." *Mascarenas,* ¶ 21, 315 P.3d at 663. We have stated that "the most serious [concern] is impairment of the defense 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' " *Id.* (quoting *Strandlien,* ¶ 14, 156 P.3d at 991). Appellant does not persuasively argue that the delay in this case resulted in unusual anxiety or impairment of his defense. In a similar case involving a delay of 368 days from the defendant's arrest to the time of trial, we stated that "It is likely true that the appellant's finances, employment, and ability to associate were impacted to some degree after he was arrested." *Boucher v. State,* 2011 WY 2, ¶ 19, 245 P.3d 342, 351 (Wyo.2011). We concluded, however, that the anxiety caused by the delay did not result in prejudice:

It is true that the appellant was incarcerated from the time he was arrested until trial, which certainly weighs in favor of the appellant. We also have no doubt that the appellant experienced pretrial anxiety, as most defendants experience in that situation. However, we cannot say that the appellant experienced an atypical level of anxiety; nor can we say that the appellant was incarcerated for such a lengthy period of time prior to trial that a finding of substantial prejudice is automatically warranted. *See Campbell [v. State ],* 999 P.2d

---

3. In *Mascarenas,* ¶ 12, 315 P.3d at 661, we held that a comparable delay—of 332 days—was not presumptively prejudicial, but was "long enough

to warrant analysis of the other speedy trial factors."

[649,] 656 [ (Wyo.2000) ] (Anxiety is typically present with pretrial incarceration, so to prevail an appellant "must demonstrate that she suffered prejudice in an extraordinary or unusual manner.").

*Id.;* ¶ 19, 245 P.3d at 351–52 (internal citation omitted). As in *Boucher,* Appellant's general statements that he was prevented from continuing his employment and his relationships with family members are not sufficient to establish that the delay in this case caused an unusual level of anxiety or otherwise prejudiced his defense.

[¶ 21] Further, we cannot conclude that the delay impaired Appellant's defense based on his assertions that his brother became unavailable prior to trial. Appellant provides no evidence that his brother would have been available if trial had been held earlier, and he does not explain how his brother's testimony would have benefitted his case. Additionally, Appellant does not explain why he could not have procured his brother's testimony while his brother was incarcerated. Ultimately, Appellant provides no basis on which to conclude that his right to a fair· trial was substantially impaired. We find no violation of Appellant's constitutional right to a speedy trial.

## II. Sufficiency of the Evidence

[¶ 22] In his second issue, Appellant contends the evidence was insufficient to sustain his conviction for sexual abuse of a minor in the third degree under Wyo. Stat. Ann. § 6–2–316(a)(iv).[4] He claims the evidence did not show that he took "immodest, immoral, or indecent liberties" with the victim as required under that statute. Appellant concedes that the photographic evidence submitted by the State "clearly shows bruising above [the victim's] breast, consistent with the allegation that [Appellant] grabbed [the victim] and pinned her to the ground."

He claims, however, that "it would have been impossible for [Appellant] to be both in front of [the victim] pulling her shirt down and also behind her grabbing her to throw her down and pin her to the ground." Ultimately, Appellant claims that his actions were "not of a sexual nature."

[¶ 23] We apply our familiar standard of review for claims of insufficiency of the evidence:

When reviewing the sufficiency of the evidence, this Court accepts as true the State's evidence and affords it those inferences which may be reasonably and fairly drawn from it. We do not consider conflicting evidence or inferences that can be drawn from such evidence. Our duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the ·jury actually did.

*Wilkerson v. State,* 2014 WY 136, ¶ 28, 336 P.3d 1188, 1200 (Wyo.2014).

[¶ 24] With respect to the definition of "immodest, immoral or indecent liberties" we have stated that

... what shall be regarded as 'immodest, immoral and indecent liberties' is not specified with particularity, but that is not necessary. The indelicacy of the subject forbids it. The common sense of the community, as well as the sense of decency, propriety, and morality which people generally entertain, is sufficient to apply the statute to each particular case, and point out unmistakably what particular conduct is rendered criminal by it.

*Dougherty v. State,* 2010 WY 127, ¶ 11, 239 P.3d 1176, 1180 (Wyo.2010) (quoting *Dekelt v. People,* 44 Colo. 525, 99 P. 330, 332 (1909)).

[¶ 25] The victim's testimony in this case provided more than sufficient evidence for a jury to conclude beyond a reasonable doubt

---

4. Wyo. Stat. Ann. § 6–2–316(a)(iv) provides as follows:

**6–2–316. Sexual abuse of a minor in the third degree.**

(a) Except under circumstance constituting sexual abuse of a minor in the first or second degree as defined by W.S. 6–2–314 and 6–2–315, an actor commits the crime of sexual abuse of a minor in the third degree if:

. . .

(iv) Being seventeen (17) years of age or older, the actor knowingly takes immodest, immoral or indecent liberties with a victim who is less than seventeen (17) years of age and the victim is at least four (4) years younger than the actor.

that Appellant took immodest, immoral, or indecent liberties with a minor. At trial, the victim testified that while Appellant was sitting on the couch next to her, he pulled down her shirt repeatedly to expose her breasts. She also stated that, when she got up from the couch and walked away, Appellant followed her into the kitchen, grabbed her breasts from behind, and forced her onto the floor.

[¶ 26] Additionally, the victim testified to a history of sexual abuse inflicted by Appellant—testimony which further undermines Appellant's claim that his contact with the victim was "not of a sexual nature." Ms. Van Patten also testified that Appellant had sexually abused the victim while the family was living together in Farson. She gave particularly harrowing testimony regarding an occasion in which she consented to and participated in sexual abuse of the victim with Appellant after he instructed her to put a sleeping pill in the victim's milkshake. Further, statements made to the chief investigating officer by the victim and Ms. Van Patten indicated Appellant's sexual desire for the victim during the months leading up to the incident on May 22. According to the officer's testimony, Ms. Van Patten stated that Appellant constantly told her that he wanted to have "titty time" with the victim, meaning that "he constantly wants to see [the victim's] breasts and is constantly trying to look down her shirt." The victim's mother explained to the officer that, since the victim had gotten older and started developing into a young woman, Appellant had become more sexually attracted to her. During the victim's interview with the investigating officer, she stated that her mother repeatedly asked her to come to bed with her mother and Appellant, and that her mother would tell her that Appellant wanted to "play" with her.

[¶ 27] Finally, we find no merit in Appellant's suggestion that the victim's testimony was inconsistent because "it would have been impossible for [Appellant] to be both in front of [the victim] pulling her shirt down and also behind her grabbing her to throw her down and pin her to the ground." According to the victim's testimony, Appellant grabbed the victim's breasts and forced her onto the

ground after he pulled down her shirt to expose her breasts. Her testimony indicated that these events occurred sequentially, not simultaneously. Accordingly, Appellant would not have to be both "in front of" and "also behind" the victim at the same time. We find no contradiction in the victim's testimony. Based on the evidence contained in the record, the jury could reasonably have concluded that Appellant took "immodest, immoral or indecent liberties" with the victim.

### III. Ineffective Assistance of Counsel

[¶ 28] In his final issue, Appellant claims he received ineffective assistance of trial counsel. After filing his appeal, Appellant filed a motion for limited remand for the purpose of developing the record on his claim of ineffective assistance of counsel pursuant to W.R.A.P. 21 and *Calene v. State*, 846 P.2d 679 (Wyo.1993). After a review of the motion and the attached materials, we denied the motion. In his brief, Appellant reasserts his claim of ineffective assistance of counsel based on the same grounds set forth in the motion. Namely, Appellant asserts his counsel was ineffective because he (1) did not file a written demand for a speedy trial, and (2) did not hire an expert witness in the field of child psychology. Appellant also adds a claim of ineffectiveness, not raised in his motion for a limited remand, based on his counsel's failure to investigate tape-recorded conversations in which Appellant alleges to have recorded statements made by Ms. Van Patten. Claims of ineffective assistance of counsel involve mixed questions of law and fact and are reviewed *de novo*. *Ortega–Araiza v. State*, 2014 WY 99, ¶ 5, 331 P.3d 1189, 1193 (Wyo.2014).

[¶ 29] When reviewing claims of ineffective assistance of counsel, we apply the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate, first, that trial counsel's performance was deficient, and second, that the deficient performance caused prejudice to the defense. *Rodriguez v. State*, 2010 WY 170, ¶ 14, 245 P.3d 818, 823 (Wyo.2010) (cit-

ing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064). "[T]he paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance." *Rodriguez,* ¶ 14, 245 P.3d at 823. We invoke a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment. *Id.* "We are reluctant to reverse based upon allegations of ineffective assistance of counsel, and have stated that '[i]n the usual case, ineffective assistance of counsel is going to be demonstrable because of a cumulation of errors with a determination that, in the entire context of the trial, the defendant either was, or was not, denied a right to a fair trial.'" *Proffit v. State,* 2008 WY 114, ¶ 33, 193 P.3d 228, 241 (Wyo.2008) (quoting *Dickeson v. State,* 843 P.2d 606, 612 (Wyo.1992)).

### A. Written Demand for Speedy Trial

■ [¶ 30] In his first claim of ineffectiveness of counsel, Appellant asserts that his counsel's performance was deficient because he did not file a written demand for a speedy trial. Appellant claims that this resulted in the denial of his motion to dismiss the charges against him. He relies on the district court's statement, in its order denying the motion to dismiss, that Appellant had not filed a written demand for a speedy trial:

> The Defendant has not filed a written demand for speedy trial in the Circuit Court (the Court contacted the Clerk of Circuit Court and takes judicial notice of the absence of a demand for speedy trial in the Circuit Court file) or the District Court in this case or the prior case. The Defendant did mention speedy trial on the record during the arraignment in District Court in this case, but that is irrelevant—Rule 48(b)(7) specifies a written demand for speedy trial.

Although the district court referenced the failure to file a written demand for a speedy trial, that fact does not impact our analysis in this case. Under W.R.Cr.P. 48(b)(5), "Any criminal case not tried or continued as provided in this rule shall be dismissed 180 days after arraignment." W.R.Cr.P. 48(b)(7) pro-

vides, in turn, that "A dismissal for lack of a speedy trial under this rule shall not bar the state from again prosecuting the defendant for the same offense unless the defendant made a written demand for a speedy trial or can demonstrate prejudice from the delay." In the present case, the original case was not dismissed on speedy trial grounds. The State voluntarily dismissed the case against Appellant within 180 days of his initial arraignment. As a result, W.R.Cr.P. 48(b)(7) had no operative effect, regardless of whether Appellant had filed a written demand for a speedy trial. In other words, even if Appellant's counsel had filed a written demand for a speedy trial, W.R.Cr.P. 48(b)(7) would not have prevented the State from re-filing the charges. Further, as discussed above, Appellant was not prejudiced by the delay in this case. Accordingly, we find no reason to conclude that Appellant was prejudiced by his counsel's failure to file a written demand for a speedy trial.

### B. Failure to Call Expert Witness

■ [¶ 31] Appellant also claims, in a one-paragraph argument, that his attorney's decision not to call an expert in child psychology constituted ineffective assistance of counsel. With respect to a claim of ineffectiveness of counsel for failure to call an expert witness, we have stated that the defendant must demonstrate there was an expert "available and necessary," and that he or she "would have testified consistently with [the defendant's] theory." *Barkell v. State,* 2002 WY 153, ¶ 16, 55 P.3d 1239, 1243 (Wyo.2002) (citing *McCoy v. State,* 886 P.2d 252, 256 (Wyo.1994)). Appellant alleges that there were discrepancies in the testimony of the victim and Ms. Van Patten, but he does not identify any specific inconsistencies in his brief. Instead, Appellant makes the bare assertion that "[a]n expert in child psychology would have been able to explain to the jury why child victims sometimes embellish their stories or invent facts." Appellant does not identify the expert who would have testified on his behalf, and offers no indication that the expert would have testified consistently with his theory of the case. Additionally, we note that Appellant's counsel cross-examined the State's expert child psycholo-

gist, and specifically questioned the expert regarding motivation for false reporting of sexual abuse. The expert admitted that children sometimes make false allegations of sexual abuse, and explained that this behavior is most often a result of coaxing by a parent who "intentionally tries to manipulate the child into saying [the sexual abuse] happened." For the foregoing reasons, we conclude that counsel's decision not to call an expert in child psychology did not constitute deficient performance.

### C. Failure to Investigate Tape Recordings

■ [¶ 32] Finally, Appellant claims that his counsel was ineffective for failing to investigate tape-recorded conversations in which Appellant alleges to have captured Ms. Van Patten "begging [him] not to mention that her daughter tried to kill [him]," and stating that the victim had "twisted the story to get what she wants." Appellant contends the alleged recordings would have aided his defense because they indicated that the victim and Ms. Van Patten gave false testimony. Aside from Appellant's claim, however, there is no evidence in the record to indicate that the tape-recordings exist.[5] Based on the record before us, we are unable to determine that Appellant's counsel failed to investigate the alleged tape recordings, or that the decision not to introduce them, if they did in fact exist, constituted deficient performance. We conclude that Appellant did not receive ineffective assistance of counsel.

[¶ 33] Affirmed.

---

5. We note that in his motion for limited remand to develop the record relating to his claims of ineffective assistance of counsel, Appellant did not claim that his counsel was ineffective for failing to investigate the alleged tape recordings, and he did not seek remand for the purpose of discovering the alleged recordings.