2011 WY 39

**Dana L. GRAHAM, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–10–0163.**

Supreme Court of Wyoming.

March 4, 2011.

ment and Sentence finding her guilty of delivery of methamphetamine (second or subsequent offense). Wyo. Stat. Ann. §§ 35–7–1031(a)(i) and 35–7–1038 (Lexis-Nexis 2009). She maintains that the district court abused its discretion by denying the State's motion to dismiss the charges against her (without prejudice to refile them). She also contends that the district court erred in excluding the testimony of an eye witness to her crime, on the basis that the district court was concerned that the witness might exercise his right not to incriminate himself (Fifth Amendment protections) and, thereby, deflect the jury's attention from Graham's criminal act. We will affirm.

## ISSUES

[¶ 2] Graham raises these issues:

1. Did the court abuse its discretion in denying the State's motion to dismiss without prejudice, in violation of the separation of powers doctrine?

2. Did the trial court err when it excluded Ms. Graham's witness in violation of her Sixth Amendment rights without sufficient showing of the extent the witness would exercise his Fifth Amendment rights?

The State's rephrasing of the issues essentially echoes that posited by Graham.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Olson, Appellate Counsel; and Kirk A. Morgan, Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Leda M. Pojman, Senior Assistant Attorney General. Argument by Ms. Pojman.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Dana L. Graham (Graham), challenges the district court's Judg-

## FACTS AND PROCEEDINGS

[¶ 3] Evanston area police officers suspected Graham of dealing in drugs. The investigators decided to use a confidential informant to make a buy from her. In the briefs, the name of the confidential informant is not revealed. However, in the record on appeal his name, Terry Christiansen (Christiansen), is used frequently, and it will help to keep the narrative of this case on track to use it. He had been recruited from the Uinta County Detention Center where he was spending time for "some drug crimes" to make a controlled buy of methamphetamine from Graham.

[¶ 4] On June 29, 2009, Christiansen was given $350.00 in cash by two drug enforcement officers to facilitate the purchase of an

"eightball" (1/8 ounce) of methamphetamine—the going street price in Evanston. A photocopy of that currency was introduced as evidence in the case. The currency was never recovered, or otherwise traced to Graham, because she was not arrested until many months later. Prior to sending Christiansen out to make the buy, he was outfitted with a recording device so any conversation he had with Graham could be recorded. In addition, he was informed that he would be searched to make sure he did not have any large sums of currency or drugs on his person or in his vehicle. Christiansen owned up to having some "personal use" crystal methamphetamine in his pickup. Those drugs were virtually identical to the drugs he bought from Graham. The police officer described it as a "very small amount," but its exact weight is not revealed in this record. That matter is still an open, pending criminal case in Uinta County.

[¶ 5] Christiansen's pickup was searched by one officer and Christiansen himself was searched by the other. Each of the searches took only a few minutes and did not involve removal of Christiansen's clothing or an invasive inspection of his body or of his pickup.

[¶ 6] After the above-described tasks had been accomplished, Christiansen was sent on his way to Graham's home and he was followed there by the police officers. Christiansen parked in front of Graham's house, and although the police did not have a clear view of his vehicle, they were very nearby and could hear over the wire what Christiansen was doing. Three voices could be heard on the wire—one female (Graham) and two male (Christiansen and Bobby Roberts (Roberts)). Roberts figures in the second issue in this appeal. He happened to show up shortly after Christiansen arrived, and he was present during the entire transaction. He is the witness that Graham wanted to call as an "eye witness" to the crime, but after quite a bit of courtroom maneuvering, he decided not to testify (the proceedings were delayed while a public defender was rounded up to come and advise Roberts about the legal risks he would be taking if he testified). Eventually, Roberts decided he did not want to testify. It is not clear if any effort was made to get Christiansen to Wyoming so he could testify against Graham. He was in the Golden State Medium Correctional Facility in McFarland, CA, in early March of 2010.

[¶ 7] When the police officers attempted to testify about what was said during the drug transaction, the district court would not allow it. Eventually, a tape recording, of marginal quality, was played for the jury.

**Denial of motion to dismiss without prejudice**

[¶ 8] The first issue raised in this case arose because the investigating police officers called Graham on October 1, 2009, and asked her to come to their offices at the Evanston Police Department to talk about the events of June 29, 2009. One purpose of that interview was to ask her to become a confidential informant for the Evanston Police Department. She declined to do that. She spoke with the officers at length and incriminated herself, to a limited extent, with respect to the incident on June 29, 2009. Those discussions were also recorded.

[¶ 9] At a pretrial conference held on March 24, 2010, the prosecutor broached the subject of W.R.E. 404(b) evidence which could potentially have an impact on Graham's defense. That evidence was on the tape recorded interview that took place on October 1, 2009. The district court was very concerned about the content of the tape recorded discussions Graham had with the police and decided that the prosecution could not use the tape. Instead, if the prosecution wanted to make use of the general tenor of the discussions had on October 1, 2009, then that would have to be done with questions posed to the police officers, and answered by them, but carefully avoiding placing any Rule 404(b) evidence, or other objectionable evidence, before the jury. In response, the prosecutor made a motion to dismiss the charges against Graham without prejudice. The district court refused to grant the motion. The prosecutor did not argue to the district court that it was usurping the prosecutor's prerogatives and violating the principles of separation of powers. Defense counsel did not object to the motion to dismiss made by the prosecutor.

[¶ 10] Graham contends that the district court's refusal to grant that motion to dismiss without prejudice was an abuse of discretion that violated the separation of powers doctrine. We are not persuaded that Graham can use the district court's refusal to grant the prosecution's motion to dismiss as a sword in these circumstances. Graham did not object to the district court's denial of the motion to dismiss. That is, Graham cannot construct an injury to her defense strategy based upon the district court's insistence that the case proceed to trial in accordance with the planned schedule for that trial and in a manner that protected her rights vis-a-vis W.R.E. 404(b) evidence. In 3B Charles Alan Wright, Nancy J. King, and Susan R. Klein, Federal Practice and Procedure: Criminal 3d § 812, at 323–32 (2004 and Supp.2010), we found this very instructive authority:

At common law the prosecutor could enter a nolle prosequi without approval of the court. This was the rule recommended to the Supreme Court by the Advisory Committee on Criminal Rules, but the Court itself, on promulgating the rules, added the requirement in Rule 48(a) that only by leave of court could the prosecution file a dismissal. The reason for this action by the Court is unclear. It has been read as an expression by the Court of a belief that entry of a nolle prosequi should be a permissive right only, and as intended to prevent harassment of a defendant by charging, and then dismissing without placing a defendant in jeopardy.

It is difficult indeed to see any real or substantial change or benefit achieved by Rule 48(a). The court is powerless to compel a prosecutor to proceed in a case that he believes does not warrant prosecution. If the court refuses consent to dismiss, the prosecutor in his opening statement to the jury and in his presentation of evidence can indicate to the jury the considerations that should work an acquittal.

Nevertheless the requirement of leave is in the rule, and each judge is left to struggle with its uncertainties as best he can. Since the court must exercise a sound judicial discretion in considering a request for dismissal, it must have factual information supporting the recommendation. Leave will be granted if the government is without sufficient evidence to obtain a conviction or if dismissal is sought for some other bona fide reason that does not involve harassment of the defendant. Courts have expressed willingness to deny a prosecutor's motion if it was "clearly contrary to manifest public interest," although some courts would require, in addition, a showing of bad faith.

[¶ 11] Given the circumstances that exist here, we hold that the district court did not abuse its discretion in denying the motion to dismiss without prejudice, that Graham was not injured in any way by the district court's ruling and, further, that the district court's action did not violate the separation of powers doctrine.

**Error in not permitting Bobby Roberts to testify in support of Graham's defense**

[¶ 12] This issue arose when Graham called Roberts as the first witness in her defense. He was called to the stand at 1:00 p.m., on May 6, 2010. Roberts' testimony was to be about his observations of what went on in Graham's home when the methamphetamine buy at issue in this case was made. He was listed as such a witness in Graham's pre-trial memorandum. When defense counsel called him to the stand, the prosecutor immediately raised an objection. The objection was that Roberts was a co-conspirator and that he needed to be given a warning before he testified. The jury was sent out of the courtroom. The district court then warned Roberts that criminal charges could be brought against him based on the facts presented during Graham's trial. The district court then read Roberts his *Miranda* warning. Roberts expressed a lack of understanding as to what was going on, and the district court said he did not think he could say anymore, but then did explain that if Roberts wanted an attorney present while he was testifying, he could have one, and if he could not afford one, one would be appointed for him. Furthermore, he could consult with that attorney if he was asked questions that might incriminate him and that he could decline to answer such questions. The district court then asked Roberts if he wanted

to testify in light of those warnings. Roberts said he wanted an attorney.

[¶ 13] A search then began for an attorney to advise Roberts and eventually, Mike Cornia, an Evanston attorney, was located to come and provide advice to Roberts. At about 2:00 p.m., there was a conference between the district court, the defense attorney, the prosecutor, and Mr. Cornia. Roberts was not present. Mr. Cornia told all in attendance about his discussions with Roberts. After yet more discussion, Mr. Cornia indicated that Roberts did not want to testify. Although the record is not entirely clear on this point, it appears that the district court excluded Roberts as a witness because it was likely that he would exercise his Fifth Amendment rights if asked many of the questions likely to be posed to him.

[¶ 14] Graham contends that she was denied her right to compulsory process when Roberts ultimately did not testify. She further contends that the district court's action with respect to Roberts and his ultimate decision not to testify violated her right to a fair trial. It is our conclusion, after clearly examining the record, that Roberts decided not to testify after consultation with his attorney. Although some of the proceedings associated with Roberts' decision not to testify—because of the likelihood that he might incriminate himself—were unusual, we conclude that Graham was not prejudiced by the State's or the district court's actions with respect to this issue. Graham has not presented cogent argument or pertinent authority that these circumstances constitute reversible error.

## CONCLUSION

[¶ 15] The district court did not abuse its discretion in denying the State's pretrial motion to dismiss the information without prejudice. Graham failed to produce a cogent argument or pertinent authority that the district court erred in not allowing Graham to call Roberts as a witness once he had clearly expressed his intent not to answer any questions that might serve to incriminate him with respect to the events of June 29, 2009.

The Judgment and Sentence of the district court are affirmed.