# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 104

APRIL TERM, A.D. 2020

*August 10, 2020*

MATTHEW A. CARABAJAL,

**Appellant**
**(Defendant),**

v.

S-19-0284

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel. Argument by Ms. Cooper.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General. Argument by Ms. Mercer.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Chief Justice.**

[¶1]     The State filed two separate informations charging Matthew Carabajal with multiple felonies and misdemeanors.  Late in the case, it filed motions to join the charges for trial, which the district court denied as untimely.  The State then moved to dismiss the charges without prejudice, advising that it intended to refile the charges in a single information.  The court granted the State's motions without prejudice, and Mr. Carabajal appeals.  We reverse.

## ISSUES

[¶2]     This appeal presents a single dispositive issue, which we state as:

> Did the district court abuse its discretion in granting the State's motion to dismiss the charges against Mr. Carabajal without prejudice? [1]

## FACTS

[¶3]     On January 8, 2019, a faculty member at South High School in Cheyenne discovered that his 2008 Ford F-350 was missing from the school parking lot and reported it to the school resource officer, Officer Emmanuel Fardella of the Cheyenne Police Department.  Officer Fardella found broken glass where the vehicle had been parked and then checked the school's video surveillance.  The video surveillance showed Matthew Carabajal leaving the school by a door near the faculty parking lot at 1:32 p.m. and the missing Ford leaving the parking lot at 1:35 p.m.  Cheyenne police located the Ford the next day at a Cheyenne park.  It had a broken window, and its owner reported that two cordless drills, their batteries, and a Pioneer audio deck were missing from it.

[¶4]     On February 28, 2019, Officer Fardella received another report, this time concerning a vehicle burglary on campus.  The vehicle was a 2012 Honda Pilot that belonged to a student, and a witness reported seeing Mr. Carabajal discharge a firearm into one of its windows and pull a backpack from it.  Mr. Carabajal was then seen leaving the area in a 2008 Kia Sportage that was reported stolen by another student.

[¶5]     Later that day, Mr. Carabajal was observed returning to the area on foot, and Officer Fardella and school officials made contact with him.  Mr. Carabajal consented to a search of his own vehicle, and a marijuana pipe and plastic bag of marijuana were found.  He

---

[1] Mr. Carabajal presents a second issue that asks this Court to amend W.R.Cr.P. 48 to change the manner in which time is calculated under the rule when the State dismisses charges without prejudice and then refiles them.  On March 24, 2020, the Court adopted such an amendment per the recommendation of the Permanent Rules Advisory Committee, Criminal Division.  We therefore will not address Mr. Carabajal's second issue.

1

admitted that the drugs were his, and he also admitted to being in the Kia, but claimed that someone else had picked him up in it and that they had gone to the area of Fox Farm Road and Columbus Drive to smoke. The Kia was found in the area of Fox Farm and Columbus, but the school's surveillance video showed no one else in the vehicle. The backpack Mr. Carabajal had taken from the Honda was still in the Kia.

[¶6]   On March 1, 2019, the State filed its first information against Mr. Carabajal, charging him with four offenses: Count I: aggravated burglary for the February 28 burglary of the Honda; Count II: felony theft for the February 28 theft of the Kia; Count III: misdemeanor property destruction for the February 28 shooting damage to the Honda; and Count IV: misdemeanor possession for the February 28 possession of marijuana. On March 8, 2019, Mr. Carabajal was bound over to district court on Counts I, III, and IV. Count II was dismissed at the preliminary hearing, apparently because the State failed to present evidence that the Kia's owner had not given Mr. Carabajal permission to use the vehicle. The three counts bound over in this information became Docket 34-412.

[¶7]   On March 5, 2019, the Cheyenne Police Department received a report of a stolen firearm. The owner, Jerika Pino, reported that her 9mm Taurus pistol was missing from her home safe, along with one magazine of ammunition. She had the remainder of the ammunition, all of which bore a WMA 15 stamp on the casing. She reported that Mr. Carabajal babysat her child for several hours on February 23, 2019, and after she heard that he had been arrested for the February 28 shooting incident at South High School, she suspected that he had taken her firearm. Detective James Harper investigated and found:

> The Cheyenne Police Department did investigate a shooting that occurred at South High School on February 28, 2019. Matthew Carabajal was arrested for that incident and his white HTC phone was seized. The firearm was not recovered, but a spent shell casing was found. The shell casing had "WMA 15" stamped into the bottom of the casing.
>
> I obtained a search warrant for the phone. Matthew Carabajal took several pictures of himself and the stolen Taurus on February 25, 2019. In one of the photos you can make out the serial number as [matching the serial number of the pistol reported stolen by Ms. Pino].

[¶8]   On March 22, 2019, the State filed a second information against Mr. Carabajal charging him with four offenses: Count I: felony theft for the January 8 theft of the Ford truck; Count II: felony theft for the January 8 theft of the cordless drill, batteries, and Pioneer deck from the Ford truck; Count III: misdemeanor theft for the February 23 theft of the Taurus firearm; and Count IV: felony theft for the February 28 theft of the Kia (the charge dismissed from the earlier-filed information). On April 11, 2019, Mr. Carabajal

2

was bound over to district court on all four charges. The four counts bound over in this information became Docket 34-461.

[¶9] Mr. Carabajal was separately arraigned and pled not guilty to the charges in both informations, and case management orders were entered in each case. In Docket 34-412 (the first information), a jury trial was set for August 6, 2019, all discovery and Rule 404(b) disclosures were due by May 16, and the deadline for filing motions was July 8. In Docket 34-461 (the second information), a jury trial was set for September 10, 2019, all discovery and Rule 404(b) disclosures were due by June 13, and the motion cut-off was August 12. Mr. Carabajal filed a demand for a speedy trial in each case, as well as timely demands for discovery and disclosure of any Rule 404(b) evidence the State intended to introduce.

[¶10] On July 29, 2019, the State moved to continue the August 6 trial date for Docket 34-412 (the first information). As grounds for the continuance, it stated that the parties were working toward a global resolution of Mr. Carabajal's multiple open dockets. On July 30, the district court entered an order resetting the trial to September 10, 2019.

[¶11] On August 19, 2019, Mr. Carabajal moved to vacate the trials in Dockets 34-412 and 34-461, both of which were then set for September 10.[2] The motion advised that the parties had negotiated a plea agreement in all of the dockets against him and requested a setting for a change of plea hearing. The district court set the change of plea hearing for September 3, 2019.

[¶12] At that hearing, defense counsel informed the court that Mr. Carabajal had changed his mind and did not wish to change his plea. Defense counsel also advised the court that she would not be prepared to try the cases by September 10 and requested that they be reset. Because the Rule 48 deadline for a trial in Docket 34-412 was September 28, Mr. Carabajal agreed to waive his right to a speedy trial in that docket.

[¶13] On September 4, 2019, the court reset the trials in both Dockets 34-412 and 34-461 to October 16, 2019. On September 16, it held a conference concerning the trials for the two dockets and asked defense counsel if Mr. Carabajal was prepared to go to trial. She responded:

> Yes, Your Honor, in both of those dockets. I do think they need to be tried separately. I know that the State wants to be heard with respect to that. But it is certainly – in the second docket there are charges completely unrelated to what's in the first.

---

[2] The motion made the same request for a third docket with more charges against Mr. Carabajal, which is not at issue in this appeal.

[¶14] When the court suggested that Docket 34-461 (the second information) should be tried first because no speedy trial waiver had been signed in that case, the following exchange took place:

> [PROSECUTOR]: Well, Your Honor, I've had the opportunity to look into – more to the evidence in this case since Mr. Carabajal had rejected the plea offer that I thought was previously in place.
>
> Docket 34-461, I don't know that the State could try that case independent of Docket 34-412 because the evidence overlaps. It was – there was a theft of a gun charge in Docket 34-461. And the way that they tied that theft to Mr. Carabajal was through an aggravated burglary in 34-412 involving that same gun and the gun casing.
>
> So that's that something I anticipate briefing for this Court this week so I could submit something to the Court to make a decision of how we can try this in one logical unit. But just the way the evidence overlaps, 461 is not triable without the evidence in 412.
>
> THE COURT: Well, for whatever reason, they were charged separately by your office. My guess is you were not the one who did that, . . . . I guess procedurally what we would have to do is you could file a motion to join the cases and give [defense counsel] an opportunity to be heard whether she joins in that [motion] or whether she's objecting to that motion. And then we'll make a determination.
>
> So the sooner you could get that motion filed, the sooner we can get it on our docket to be heard. And the Court will make a decision about whether joinder is appropriate or whether there is any prejudice to the defendant with the joinder.

[¶15] On September 23, 2019, the State filed a motion to join all the counts in Docket 34-412 with two of the counts in Docket 34-461: Count III (firearm theft) and Count IV (Kia theft). Mr. Carabajal objected to the motion as untimely and on the ground that it was an effort to introduce Rule 404(b) evidence that the State had failed to disclose by the deadlines set in the case management order. On September 27, 2019, the district court denied the State's motion as "untimely and too close to trial."

4

[¶16]   The case management orders in both cases required that pretrial memos be filed no later than twenty days before trial.  Given the October 16, 2019 trial date, that meant that they were due by September 26.  In Docket 34-412 (the first information), both parties had filed their memos in July, in anticipation of the trial previously set for August.  In Docket 34-461, Mr. Carabajal filed his pretrial memo on September 24, 2019, and the State filed its memo on September 30.  Additionally, on September 26, the State began producing a large amount of additional discovery to Mr. Carabajal.[3]

[¶17]   On October 7, 2019, Mr. Carabajal filed three motions in limine in response to the State's untimely pretrial memo and discovery in Docket 34-461 (the second information). In his first motion, he sought exclusion of any evidence of his reputation and alleged involvement in a shooting at South High School as undisclosed 404(b) evidence.  He argued:

> Here, to date, the State has filed no [404(b)] notice, and requested no hearing. However, on September 30, 2019, when the State untimely filed its State's Pretrial Memorandum, it listed Jerika Pino as a witness. It further indicated, "Ms. Pino may also testify as to her knowledge of Mr. Carabajal's history, including his reputation for criminal activity and the basis for her suspicion that the defendant may have taken her firearm and become involved in a shooting incident at Sou[t]h High School."

[¶18]   In his second motion in limine, Mr. Carabajal sought exclusion of any evidence not timely produced to him.  In support, he stated:

> 3.      Defendant timely complied with this Court's *Criminal Case Management Order*. On April 15, 2019 Defendant filed *Defendant's Demand for Discovery* and its *Motion for Witness Statements Pursuant to W.R.Cr.P. 26.2*. On April 29, 2018, Defendant filed its *Request for Notice of Intention to Use Evidence*;

> 4.      The State of Wyoming produced what Defendant initially believed to be complete discovery on June 11, 2019. As indicated by its June 14, 2019 *Certificate of Discovery*, the State of Wyoming produced: P94 Body Cam (1 video), 911 Call (1 call), and CPD Reports 6-11-2019 (actually containing law enforcement reports ranging from March 5, 2019 to April

---

[3] It is not clear from the record whether the discovery related to one or both dockets.

5, 2019). However, beginning on September 26, 2019, the State of Wyoming has begun inundating Defendant with discovery. Beginning that date, the State of Wyoming has produced, or reproduced (it's not entirely clear as undersigned continues to sift through the files) at least five hundred and ninety five (595) downloads – of which twenty two (22) were corrupt and could not download.

[¶19] In his third motion in limine, Mr. Carabajal sought exclusion of any witness or exhibit not timely identified in accordance with the case management order. The State did not respond to the three motions and instead, on that same date, October 7, 2019, it filed a Rule 48(a) motion to dismiss Dockets 34-412 and 34-461 without prejudice. In support, it stated:

> All counts in each docket will be immediately re-filed in a single docket. The allegations in each of the above-referenced dockets all relate to a single series of criminal behavior and should be tried together as a single trial unit. To that end, the State hereby moves this Court to dismiss Docket 34-412 and Docket 34-461, and will proceed to charge all allegations contained in each docket in a single information. Defense counsel objects to dismissal without prejudice and refiling as a single docket.

[¶20] On the same date, October 7, 2019, the State filed a new information in circuit court charging Mr. Carabajal with the seven counts from Dockets 34-412 and 34-461, along with three new charges related to the same events. The new charges included: misdemeanor property destruction for the damage to the stolen Ford truck; misdemeanor theft for the taking of the backpack from the Honda; and misdemeanor theft for the taking of a credit card and small amount of cash from the Kia.

[¶21] On October 9, 2019, the district court entered orders of dismissal without prejudice in Dockets 34-412 and 34-461. Each order noted that the State had provided a reason for its motions, and on that basis the court granted the motions. Mr. Carabajal timely appealed the orders to this Court.

## STANDARD OF REVIEW

[¶22] We review a district court's ruling on a Rule 48(a) motion to dismiss for an abuse of discretion. *Graham v. State*, 2011 WY 39, ¶ 10, 247 P.3d 872, 875 (Wyo. 2011); *see also United States v. Romero*, 360 F.3d 1248, 1251 (10th Cir. 2004).

6

## DISCUSSION

### A.    Restrictions on Rule 48(a) Dismissals

[¶23]  Rule 48(a) provides in relevant part that "the state may, by leave of court, file a dismissal of an indictment, information or citation, and the prosecution shall thereupon terminate."  W.R.Cr.P. 48.  We have cautioned that while the rule's "leave of court" requirement gives a district court discretion to deny a prosecutor's motion to dismiss without prejudice, that discretion is limited.

> [W]e must explain that this discretion, in the context of denying a motion to dismiss under Rule 48(a), is limited. *See United States v. Goodson*, 204 F.3d 508, 512 (4th Cir. 2000). As the Fourth Circuit has clearly and cogently explained, "[i]ndeed, the court must grant the government's Rule 48(a) motion unless the court concludes that to grant it would be clearly contrary to manifest public interest, determined by whether the prosecutor's motion to dismiss was made in bad faith." *Id*. That is,
>
>> [t]he disservice to the public interest must be found, if at all, in the motive of the prosecutor. Examples of disservice to the public interest include the prosecutor's acceptance of a bribe, personal dislike of the victim, and dissatisfaction with the jury impaneled.
>
> *United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995).

*State v. Bridger*, No. S-14-0161, Order Granting State's Expedited Petition for Writ of Review/Certiorari and Remanding for Further Consideration (Wyo. S.Ct. June 17, 2014) (hereinafter *Bridger*, No. S-14-0161 Order on Cert).

[¶24]  Although in *Bridger* we noted the limits on a court's discretion to deny a Rule 48(a) motion, we did not intend to diminish the importance of that discretion.  It is particularly important when the defense objects to the dismissal, as the primary objective of the leave requirement is "to prevent harassment of a defendant by charging, and then dismissing without placing a defendant in jeopardy."  *Graham*, ¶ 10, 247 P.3d at 875 (quoting 3B Charles Alan Wright et al., *Federal Practice and Procedure: Criminal* 3d § 812, at 323-32 (2004 and Supp. 2010)); *see also Rhodes v. State*, 2015 WY 60, ¶ 15, 348 P.3d 404, 410 (Wyo. 2015) (recognizing that a dismissal intended to circumvent the speedy trial period may be denied as harassment of defendant).  "[I]t is precisely because a dismissal under Rule 48(a) does not bar a subsequent prosecution that the rule requires the consent of the court."  *United States v. Omni Consortium, Inc.*, 525 F.Supp.2d 808, 815 (W.D. Tex. 2007)

7

(quoting *United States v. Davis*, 487 F.2d 112, 118 (5th Cir. 1973)).  As another court has summarized:

> Rule 48(a) is intended to check the common law power of prosecutors to enter a *nolle prosequi* before jeopardy attaches and then proceed to reindict the defendant on basically the same charges and evidence. *See United States v. Salinas*, 693 F.2d 348, 350-51 (5th Cir.1982). . . . [T]he rule's "leave of court" requirement gives the court discretion to determine the propriety of the government's motion to dismiss in order to protect a defendant's rights. *United States v. Olson*, 846 F.2d 1103, 1113 (7th Cir.1988). The court in exercising its discretion must assure the fair administration of criminal justice. *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir. 1988).

*United States v. Palomares*, 119 F.3d 556, 558 (7th Cir. 1997); *see also Rinaldi v. United States*, 434 U.S. 22, 29 n.15, 98 S.Ct. 81, 85 n.15, 54 L.Ed.2d 207 (1977) ("The principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection.").[4]

[¶25]  In order for a trial court to exercise its discretion in ruling on a Rule 48(a) motion, the government must provide a reason for its motion to dismiss.  *Graham*, ¶ 10, 247 P.3d at 875 ("Since the court must exercise a sound judicial discretion in considering a request for dismissal, it must have factual information supporting the recommendation."); *see also Strayer*, 846 F.2d at 1265 ("In order to carry out the purposes of the rule, the trial court must be informed of the prosecutor's reasons for dismissing the indictment and the factual basis for the prosecutor's decision." (citing *United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984))).  Because the government is deemed to be in the best position to judge the public interest, its reason for a dismissal is entitled to a presumption of good faith.  *Salinas*, 693 F.2d at 352-53.  That presumption is rebutted, however, if "the trial court has an affirmative reason to believe that the dismissal motion was motivated by considerations contrary to the public interest."  *Salinas*, 693 F.2d at 352 (quoting *United States v. Hamm*, 659 F.2d 624, 631 (5th Cir. 1981)); *see also Bridger*, No. S-14-0161 Order on Cert ("[T]rial courts must grant a motion to dismiss under Rule 48(a) unless the trial court has 'an affirmative reason to believe that the dismissal motion was motivated by considerations contrary to the public interest.'" (also quoting *Hamm*, 659 F.2d at 631)).

---

[4] "Wyoming's Rule 48 is nearly identical to its federal counterpart, and we find guidance from our nation's highest court and the several circuits as to how this rule ought to be applied."  *Bridger*, No. S-14-0161 Order on Cert (footnote omitted).

[¶26] One "affirmative reason" to deny a Rule 48(a) dismissal is a finding of prosecutorial harassment. *United States v. Angilau*, 2012 WL 346446, *11-12 (D. Utah 2012) (citing *Salinas*, 693 F.2d at 351-53). Prosecutorial harassment is of course contrary to the public interest and is a basis to find that a motion to dismiss is made in bad faith. *Salinas*, 693 F.2d at 351 n.15 ("It is obvious that the public interest is not served by harassing a defendant."); *Angilau*, 2012 WL 346446, *12. Such harassment may be found when the government charges, dismisses, and subsequently commences another prosecution "at a different time or place deemed more favorable to the prosecution." *Salinas*, 693 F.2d at 351 (citing *United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973)). Stated differently, a Rule 48(a) dismissal without prejudice should be rejected "if the reason for the dismissal is to gain a tactical advantage." *United States v. Pitts*, 331 F.R.D. 199, 203 (D. D.C. 2019) (citing *Ammidown*, 497 F.2d at 620); *see also United States v. Dyal*, 868 F.2d 424, 429 (11th Cir. 1989) (looking to whether dismissal was motivated by desire to gain tactical advantage); *United States v. Wallace*, 848 F.2d 1464, 1468 (9th Cir. 1988) (recognizing that a Rule 48(a) dismissal motivated by a desire to gain a tactical advantage could establish bad faith); *United States v. Casados*, 2011 WL 6300942, *2 n.2 (D. Colo. 2011) (finding no bad faith where government was not trying to gain tactical advantage).

[¶27] We do not intend to say that prosecutorial harassment will be found every time the government seeks a Rule 48(a) dismissal for strategic reasons. *See, e.g.*, *United States v. Sprofera*, 299 F.3d 725, 727 (8th Cir. 2002) (no bad faith where government dismissed three of four counts on first day of trial to streamline case); *United States v. Amaya*, 206 Fed. Appx. 757, 761 (10th Cir. 2006) (no impropriety in dismissal where government sought to delay revealing a CI's identity so as not to interfere with an unrelated investigation); *United States v. Rush*, 240 F.3d 729, 731 (8th Cir. 2001) (per curiam) (no bad faith in government's strategic decision to dismiss lesser charge); *Strayer*, 846 F.2d at 1266 (no bad faith where government dismissed indictment shortly after entered because of faulty drafting); *United States v. Casados*, 2011 WL 6300942 (D. Colo. 2011) (no bad faith where dismissal based on adversarial relationship that developed between government and alleged victim); *United States v. Wilson*, 2010 WL 3023372 (D. N.M. 2010) (allowing dismissal of count to streamline government's case). Whether prosecutorial harassment will be found depends on the circumstances surrounding the dismissal, which we find illustrated in *Salinas*, *Pitts*, and *Angilau*.

[¶28] In *Salinas*, the government moved to dismiss its charges against the defendant after the jury had been selected but before it was sworn in, citing its intention to seek a superseding indictment as the basis for its dismissal. *Salinas*, 693 F.2d at 350. During the arraignment on the superseding indictment, a concern was raised that the defendant did not understand the charges against him. *Id.* The prosecutor responded that the defendant knew exactly what the charges were because they were the same that they had almost tried previously. *Id.* The prosecutor then stated:

> Your honor, this is a superseding indictment. We were fixing to go to trial, and we did not go to trial because there were some people on the jury that knew him, and we were fixing to have a hearing and the judge was going to excuse them, but in the meantime I filed a motion to dismiss the indictment, and we superseded, because I wasn't about to go to trial under the circumstances. That's what happened.

*Salinas*, 693 F.2d at 350.

[¶29] After the defendant was convicted on the superseding indictment, he appealed. *Id.* He claimed that his conviction should be reversed because the government dismissed the original indictment in bad faith in violation of Rule 48(a). *Id.* The Fifth Circuit Court of Appeals agreed.

> The reflection of the record is specific and dramatic. The Government was simply displeased with the selected jury because there were people on it that the Government believed knew the defendant. This was the only reason ever proffered by the Government for its dismissal of the first indictment. This reason, we believe, was inadequate and improper under Rule 48(a). One week later the Government obtained a second indictment of Salinas in order to get a "better" jury, a jury more to its liking. It is apparent, therefore, that the Government used Rule 48(a) to gain a position of advantage or "to escape from a position of less advantage in which the Government found itself as the result of its own election." The Government decided to "repudiate the whole proceeding it had initiated" rather than to utilize other avenues that were available: (1) hold a hearing on the Government's allegations that some of the jurors knew the defendant, (2) conduct additional voir dire, (3) utilize one or both of the alternate jurors who had been selected, or (4) challenge the jurors for cause. In short, the Government was not content with the prospect of trying the case to the chosen jury and trifled with the Rules of Criminal Procedure to harass defendant Salinas. For this Court to condone such conduct would "invite future misconduct by the Government" and "open the door to the possibility of grave abuses."

*Salinas*, 693 F.2d at 352-53 (footnotes omitted).

[¶30]  In *Pitts*, the government moved the D.C. District Court for a dismissal without prejudice to allow it additional time to test DNA that could have been tested earlier.  *Pitts*, 331 F.R.D. at 204.  The district court held that the government may not "'validly use Rule 48(a) to gain a position of advantage, or to escape from a position of less advantage in which it found itself as a result of its own election.'"  *Id.* at 203 (quoting *United States v. Poindexter*, 719 F. Supp. 6, 11 (D.D.C. 1989)).  It then denied the motion and instead dismissed with prejudice.

> [T]he government has moved to dismiss the indictment without prejudice because of a defect in its case that has occurred through no fault of the defendant. Specifically, the government failed to test DNA swabs despite having possession of that evidence since January 18, 2019, and despite receiving requests from the defendant for that evidence. Since time cannot be excluded under the Act due to "lack of diligent preparation ... on the part of the attorney for the Government," 18 U.S.C. § 3161(h)(7)(C), the government lacks a basis for obtaining a continuance to obtain the test results. The government concedes that the testing will not be complete until July 2019, well after the expiration of the Speedy Trial date of May 3, 2019. As in *Poindexter*, the government finds itself dissatisfied with the state of its case, through no fault of the defendant, and has moved to dismiss the case without prejudice with hopes to salvage the prosecution once the DNA test results are received. However, dismissing a case without prejudice only to bring charges when the case is in a better posture for the government is precisely the type of strategic use of Rule 48 that the D.C. Circuit has proscribed. *Ammidown*, 497 F.2d at 620.

> * * * *

> . . . Under these circumstances, the Court concludes that the government seeks to dismiss this case simply because it prefers to prosecute the defendant "at a different time ... deemed more favorable to the prosecution." *Ammidown*, 497 F.2d at 620. The fair administration of justice does not countenance the use of such ploys. *See United States v. Fields*, 475 F. Supp. 903, 908 (D.D.C. 1979)("[T]he government is not free to indict, dismiss, and reindict solely to achieve a more favorable prosecutorial posture.").

*Pitts*, 331 F.R.D. at 204 (record citations omitted).

11

[¶31]   In *Angilau*, the defendant was initially indicted on two counts, robbery and the use or carrying of a firearm during the robbery.  *Angilau*, 2012 WL 346446, *2.  Two months later, he was indicted on two additional counts arising out of a separate incident, assault of a federal officer and the use or carrying of a firearm during the assault.  *Id*.  While those charges were pending, the government filed a superseding indictment that combined the four charges.  *Id*.  The defendant moved to sever the assault charges from the robbery charges on grounds that they were unrelated and a trial together would be prejudicial, and that motion was granted.  *Id*.

[¶32] Two weeks before trial, the government moved to dismiss the assault charges without specifying whether the dismissal would be with or without prejudice.  *Id.* Defendant pled guilty to the robbery charges and then moved to dismiss with prejudice the original indictment that charged him with the two assault-related counts.  *Id*. at *3.  The government responded with its own motion to dismiss the same indictment, again without specifying whether the dismissal would be with or without prejudice.  *Id*.  The court granted the government's motion with an order that likewise was silent on whether the dismissal was with or without prejudice.  *Id*.

[¶33]   Roughly a year later, the government filed another indictment against the defendant that charged him with four offenses, three RICO counts and a count for the same assault of a federal officer charge that had twice before been dismissed.  *Id.* at *3.  The defendant moved to dismiss the charges with prejudice on grounds that the prior dismissals had violated Rule 48(a).  *Id*. at *4.  The court asked the government to explain its reasons for the prior dismissals, and it responded that its RICO investigation had not been complete when the assault charge was to be tried and it also had not been prepared to go to trial on the assault charge.  *Id*. at *12.  The court disagreed that the government did not have sufficient evidence to proceed on the assault charge, and it dismissed that charge with prejudice while allowing the new RICO charges to proceed.  *Id*. at *1.  It explained:

> Here, the Government was prepared to go to trial on the assault charges. A grand jury had already indicted Mr. Angilau twice on the same charges. More than a year before, Mr. Angilau pleaded guilty to State charges arising out of the August 2007 assault incident. By its own admission, the Government was working to solidify *additional* evidence against Mr. Angilau on the assault and gun charges and was still developing its RICO case against Mr. Angilau and his co-defendants. The Government did not want just a "viable" case against Mr. Angilau on the assault charges. It wanted a third chance to present a much stronger case against Mr. Angilau in conjunction with the anticipated RICO indictment. The court recognizes that the evidence the Government was developing

12

was not ready for introduction at trial in April 2008. But there is no claim that the Government had lost its ability to prosecute Mr. Angilau on the assault and gun-related charges because additional evidence was not yet ready. Delaying indictment in order to develop and strengthen evidence, and choosing to pursue related charges in one prosecution rather than on a piecemeal basis is legitimate, but that justification rings hollow when the same entity has already indicted the defendant twice on duplicate charges arising out of events to which the defendant pleaded guilty in another forum more than a year before. The Government made a conscious choice to indict Mr. Angilau twice and it should not be allowed to avoid that choice because a potentially better avenue for conviction arose. At some point, the Government must live with its actions.

Under the circumstances of this case, the court finds that the Government has not provided sufficient reasons to justify dismissal without prejudice. The Government was, in essence, trying "to gain a position of advantage or to escape from a position of less advantage in which the Government found itself as the result of its own election [*i.e.*, its indictment]." *Salinas*, 693 F.2d at 353. Accordingly, the court hereby dismisses [the assault charges as originally indicted] with prejudice.

*Angilau*, 2012 WL 346446, *13-14.

[¶34]   While the above cases are not identical to the case before us, they illustrate that Rule 48(a) is not intended to be a device that the prosecution may use to manipulate criminal proceedings and thereby gain a tactical advantage over a defendant.  Considerations that emerge from the cases include whether the government is seeking to avoid compliance with the rules of criminal procedure, whether it has diligently prosecuted the matter, whether it is seeking to correct defects of its own making, whether it truly has insufficient evidence to proceed or merely wishes to better its proof, and whether it is attempting to avoid a speedy trial deadline.  Applying these considerations here, we find that the State improperly invoked Rule 48(a) to gain a tactical advantage and overcome shortcomings of its own making.

## B.      State's Misuse of Rule 48(a) to Dismiss Dockets 34-412 and 34-461

[¶35]   The record is clear that the State used its Rule 48(a) motion as a tactical maneuver. In mid-September, well after the motions cut-off in both dockets, the State for the first time informed the district court that it did not believe that the charge in Docket 34-461 (the

second information) for theft of a firearm could be tried without the casings evidence from the aggravated burglary charge in Docket 34-412 (the first information). The State then filed an untimely motion to join the charges, followed by an untimely pretrial memo in Docket 34-461 that listed a witness who would testify concerning the conduct charged in Docket 34-412. When Mr. Carabajal objected, the State then filed its Rule 48(a) motion as a means to join the charges and avoid the issues created by its separate filings.

[¶36] The record is equally clear that this tactical use of Rule 48(a) was made necessary by the State's lack of diligence and in an effort to avoid the speedy trial deadline in Docket 34-461. The State filed its separate informations in March 2019, and it had months to identify any difficulty those separate filings may have created. It therefore had every opportunity to timely move for an amendment or joinder of the charges in accordance with the case management orders, but it did not do so. Nor did it disclose the aggravated burglary or casings evidence as potential 404(b) evidence in Docket 34-461 (the second information) as required by the case management order. Instead, with the speedy trial deadline in Docket 34-461 foreclosing a continuance, the State misused a Rule 48(a) dismissal to "escape from a position of less advantage" in which it found itself as a result of its own lack of diligence. *See Salinas*, 693 F.2d at 353; *Pitts*, 331 F.R.D. at 203-04.

[¶37] The State disagrees that it was not diligent in its prosecution of Mr. Carabajal and contends that any delay in its actions was attributable to its belief that it had a plea agreement with him. We reject this explanation. First, the State had an obligation to comply with the case management orders in both dockets, even if it were negotiating a plea agreement. It is simply not acceptable to ignore court-ordered deadlines, file untimely motions, and serve untimely discovery on a defendant shortly before trial. Moreover, the record belies the State's claim that its delays resulted from the parties' plea negotiations and agreement. The first indication in the record that the parties were negotiating a plea agreement is reflected in the State's July 29, 2019 motion to continue the trial in Docket 34-412 (the first information). That was months into the proceedings and well past the discovery cut-off and deadlines for Rule 404(b) disclosures. It was also past the motion cut-off in Docket 34-412 and right up against the motion cut-off in Docket 34-461.[5] Under these circumstances, the State's purported reliance on an anticipated plea agreement does not explain its delays.

[¶38] As a final matter, we disagree with the prosecutor's assessment that the firearm theft charged in Docket 34-461 could not be tried without the casings evidence from the aggravated burglary charge in Docket 34-412.[6] Although the prosecutor's desire to have additional evidence to tie the firearm to Mr. Carabajal may have been understandable, its

---

[5] The motion cut-off in Docket 34-412 was July 8, 2019, and the cut-off in Docket 34-461 was August 12, 2019.

[6] *See Rhodes*, ¶ 15, 348 P.3d at 410 ("Leave will be granted if the government is without sufficient evidence to obtain a conviction or if dismissal is sought for some other bona fide reason that does not involve harassment of the defendant." (quoting *Graham*, ¶¶ 10-11, 247 P.3d at 875)).

unavailability did not doom the State's case. The State still had the testimony of the firearm's owner as to Mr. Carabajal's opportunity to take the weapon, as well as the photo downloaded from Mr. Carabajal's cellphone that showed him holding a gun that matched the description of the stolen firearm, including its serial number. As in *Pitts* and *Angilau*, the State did not seek a Rule 48(a) dismissal because it had insufficient evidence on which to proceed, but instead moved to strengthen its already viable case.

[¶39] Generally, it is for the district court to determine in the first instance whether the State has offered a good faith basis for its Rule 48(a) motion to dismiss. *See Bridger*, No. S-14-0161 Order on Cert (remanding to district court for determination of whether State's motion was made in good faith). In this case, however, the State specified the basis for its motion, and the record is clear that that basis was a misuse of Rule 48(a). We therefore will not remand for a good faith determination. *See Derr*, 726 F.2d at 619 (where government's stated reasons for Rule 48(a) dismissal were insufficient, "remanding the case for a determination whether the government had valid reasons for dismissing the original indictment would be fruitless").

[¶40] Because the State did not offer a good faith basis for its motion to dismiss, the district court abused its discretion in granting the dismissal without prejudice. We turn then to the remedy for the State's misuse of Rule 48(a).

## C.    Remedy for State's Misuse of Rule 48(a)

[¶41] The purpose of the federal Speedy Trial Act is both to protect a defendant's constitutional right to a speedy trial and "to serve the public interest in bringing prompt criminal proceedings." *United States v. Vogl*, 374 F.3d 976, 982 (10th Cir. 2004) (quoting *United States v. Gonzales*, 137 F.3d 1431, 1432 (10th Cir. 1998)). State speedy trial provisions are aimed at similar concerns.

> "A fundamental purpose of the speedy trial statute and rule is to prevent unnecessary prosecutorial and judicial delays to a pending criminal proceeding. The public interest and the interest of the accused require an expeditious determination of guilt or innocence so that the guilty can be sentenced and the innocent exonerated." *People v. Moye*, 635 P.2d 194, 195 (Colo. 1981) (citations omitted). "The purpose of the rule ensures not only a criminal defendant's constitutional right to a speedy trial, but also furthers important judicial policy considerations of relief of trial court congestion, prompt processing of all cases reaching the courts and advancement of the efficiency of criminal justice process." *State v. Wells*, 443 A.2d 60, 63 (Me. 1982).

15

*Webb v. State*, 2017 WY 108, ¶ 51, 401 P.3d 914, 930 (Wyo. 2017) (Fox, J., concurring in part and dissenting in part).

[¶42]  Because Rule 48's policy objectives go beyond protecting a defendant's right to a speedy trial, our remedy for addressing the State's misuse of the rule cannot be aimed solely at vindicating Mr. Carabajal's right to a speedy trial, which he waived in Docket 34-412 (the first information) but not in Docket 34-461 (the second information).  Our broader concerns are with the disruptive effect the State's actions had on these proceedings and the need to protect against the harassing effect of those actions.  These types of concerns warrant a dismissal with prejudice.

> Ordinarily, a district court's dismissal of an indictment pursuant to a Rule 48(a) government motion to dismiss is without prejudice. *United States v. Welborn*, 849 F.2d 980 (5th Cir.1988); *United States v. Stoker*, 522 F.2d 576 (10th Cir.1975).  However, after considering the government's explanation for its motion to dismiss without prejudice, a district court is authorized to dismiss *with* prejudice where it finds that dismissal without prejudice is contrary to the public interest or is necessary to protect a defendant against prosecutorial harassment of the sort Rule 48(a) is designed to prevent, *e.g.*, charging, dismissing, and recharging on dismissed counts when the defendant objects to dismissal of an indictment without prejudice. *See*, *e.g.*, *In re United States*, 345 F.3d 450 (7th Cir. 2003), citing *Derr*, 726 F.2d at 619 and *United States v. Towill*, 548 F.2d 1363, 1369-70 (9th Cir. 1977); *United States v. Gatto*, 763 F.2d 1040 (9th Cir. 1985); *United States v. Flemmi*, 283 F.Supp.2d 400, 407-09 (D. Mass. 2003); *United States v. Rossoff*, 806 F.Supp. 200 (C.D. Ill. 1992).

*United States v. Wecht*, 2008 WL 65605, * 6 (W.D. Pa. 2008); *see also* 3B Wright & Miller, *Federal Practice and Procedure Crim.* § 801 (4th ed. April 2020 update) ("A dismissal properly taken under Rule 48(a) is without prejudice . . . .  The result will be otherwise, and dismissal will be with prejudice, if the government sought dismissal for an improper purpose, such as harassment of the defendant." (footnotes omitted)).

[¶43] Dismissal with prejudice is likewise the appropriate remedy when a motion to dismiss without prejudice is granted and then subsequently found to have been made in bad faith.  *Derr*, 726 F.2d at 619 ("Under the circumstances, dismissing the second indictment was the only sanction that would effectuate the primary purpose of Rule 48(a)."); *Salinas*, 693 F.2d at 353 ("Because of the improper motives of the Government in moving to dismiss the first indictment, the conviction [on the second indictment] is

reversed."). While we recognize that this is a harsh result, we agree with the *Derr* and *Salinas* courts that under these types of circumstances, it is the only remedy that effectuates the purposes of Rule 48. Were we to hold otherwise and remand for entry of an order simply denying the State's motions to dismiss without prejudice, the policy underlying Rule 48 would not be served. The State will have been permitted to needlessly delay these proceedings, and the reinstituted charges against Mr. Carabajal would effectively operate to permit the type of bad faith charging, dismissing, and recharging that Rule 48(a) is intended to prevent.[7]

[¶44] For these reasons, we reverse the orders granting dismissals without prejudice in Dockets 34-412 and 34-461 and remand for entry of an order dismissing the charges in both dockets with prejudice.

## CONCLUSION

[¶45] Although the district court understandably felt constrained in its discretion under Rule 48(a), the State may not use a dismissal without prejudice to escape from a position of disadvantage caused by its failure to diligently prosecute a case. We therefore find that the court abused its discretion in granting the State's Rule 48 motions, and we reverse and remand for entry of an order dismissing the charges in Dockets 34-412 and 34-461 with prejudice.

---

[7] We do not suggest that the district court was required to dismiss the charges in Dockets 34-412 and 34-461 with prejudice. Our holding is only that the court should have denied the motions to dismiss to the extent that they were without prejudice. At that point, the State would have had the option of dismissing with prejudice or proceeding to trial. *See*, *e.g.*, *Omni Consortium*, 525 F.Supp.2d at 813 (giving government the option of dismissing with prejudice or proceeding to trial).

17